Tommie A. JOHNSON, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 19969.

United States Court of Appeals
District of Columbia Circuit.

Filed May 2, 1966.

See also 120 U.S.App.D.C. 69, 344 F.2d 163.

Before BAZELON, Chief Judge, and FAHY and BURGER, Circuit Judges.

PER CURIAM:

In Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060, (1958), the Supreme Court held that an indigent is entitled to representation by counsel acting as an advocate. In examining the role of appointed counsel the Court stated:

> If counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may seek to withdraw on that account. If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed * * *.

356 U.S. at 675, 78 S.Ct. at 975; *accord,* Hardy v. United States, 375 U.S. 277, 281, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964). Pursuant to the *Ellis* decision, this court has established some further guidelines for appointed counsel who, after making a "conscientious investigation," concludes a case is frivolous. See Statement to be Handed by the Clerk to Appointed Counsel, dated December 13, 1963. We indicate in that Statement that we "will be greatly aided if, as a general rule, appointed counsel remains in a case." [1] We also recognize that counsel may justifiably feel a case to be so lacking in merit that he desires to withdraw on that ground. But if he moves to withdraw, we require that he—

> * * * file a supporting memorandum analyzing the case legally, citing record references to the transcript if one is available [2] and also citing any

---

1. This is especially true in a direct appeal from a criminal conviction.

2. After the decision in Hardy v. United States, *supra*, it would be a rare case in which a transcript would not be available.

case or cases upon which counsel relied in arriving at his ultimate conclusion. Statement, *supra.* The confidential memorandum in support of the motion is not placed in the public files of the case and is to be served upon the appellant but not the appellee, so as not to prejudice appellant's case in advance of the filing of the brief, if we conclude that the appeal is not frivolous. In effect, the memorandum as described in our 1963 Statement is to be similar to a brief, and its length and detail will, of course, depend upon the nature and complexity of the particular case.

To fulfill our responsibility under the *Ellis* decision, we must conclude not only that counsel has made a conscientious investigation of the case, but also that we agree with his evaluation of it.[3] We cannot reach such a conclusion in the absence of a fully documented memorandum. We therefore deny the present motion to withdraw.

BURGER, Circuit Judge (concurring):

This case brings into focus a problem which has been developing over recent years during which the right to appellate review at public expense has been judicially expanded so that it is now, for all practical purposes, an absolute right for every indigent. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L. Ed.2d 21 (1962). The Supreme Court recognized that under a system in which virtually all convictions would be reviewed, it was inevitable that many would have no non-frivolous point; its opinion in Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958), contemplated that if assigned counsel was convinced, after full study, that the appeal was frivolous, he could withdraw. *Ellis* also held that if the Court of Appeals "agrees with counsel's evaluation of the case, then leave to withdraw may be

allowed *and leave to appeal may be denied.*"[1] (Emphasis supplied.)

Since *Coppedge* this Court has been confronted with numerous requests for withdrawal by counsel who concluded that appeal was pointless; when we granted such requests, as we did in most cases, we advised the Appellant he could continue his appeal pro se. At the same time we adopted a general but not rigid practice of declining to appoint a new lawyer after the first had withdrawn. Since the Supreme Court had made clear that appointed counsel had the same burdens and duties of advocacy as private counsel, we tended to view the right of withdrawal of appointed counsel as equal to that of private counsel.

In concluding that appointed counsel's rights and duties are the same as private counsel's we may have erred in overlooking certain inescapable differences between the two categories. Under the Criminal Justice Act provisions to compensate appointed counsel, there may be additional points of differences. It now seems clear to me that it is unrealistic to view appointed and privately retained counsel as in precisely the same posture for all purposes; it is especially unrealistic to allow appointed counsel to withdraw and tell Appellant he can continue an appeal "on his own," including writing his own brief.

The frequency of withdrawal applications by counsel who see no point for an appeal and our response to those motions is a consequence, I think, of some misconception and confusion as to the role of the advocate. Courts have often said, and the literature and the professional canons make clear, for example, that the advocate need not believe and indeed may not assert a belief, if he has such, in the innocence of his client or the justice of his cause.

---

3. Counsel should not limit his investigation and evaluation to those points which his client wishes to raise, or has raised in a *pro se* notice of appeal. See Hardy

v. United States, *supra*, 375 U.S. at 287, 84 S.Ct. at 430 (concurring opinion).

1. We have had very few, if indeed any, denials of the appeal in reliance on this authority.

The popular misconceptions about the function of lawyers in criminal cases flow from many sources including misconduct of some lawyers themselves, distortion of real life in popular media such as television and movies, and a misplaced sentimentality which has put some lawyers in doubt as to their function.

One result of these fallacious and blurred conceptions of the advocate's function is the public image of the "criminal lawyer" as the servile "mouthpiece" or the alter ego of the accused or one who does for the accused what the accused would do for himself if he had the legal skills. This is more than a fallacy; it is totally incompatible with the basic duty of a lawyer as an officer of the court and contrary to the traditions and ethics of the legal profession.

A lawyer complying with the canons and traditions of the bar advocates but does not *identify* with his client. The alter ego or "mouthpiece" school of *thought, which is happily a minute frac*tion of the legal profession, would carry this perverted notion to the point of complete identification of lawyer with client, *i. e.*, the lawyer as an extension of the accused himself with a community of interest, motivation and goals, bound to engage in falsehood and chicane at the command of the client. These concepts have long been rejected by the legal profession and find no acceptance among honorable members of the bar.[2]

The lawyer engaged in defense of an accused should be—and should be recognized as—a *professional* advocate with a highly important but none the less limited function, *i. e.*, limited and circumscribed by the rules of the system and the ethics of the profession.[3] At the trial stage his duty is to put the prosecution to its proof, to test the case against the accused, to insist that the procedural safeguards be followed and to put forward evidence which is valid, relevant and helpful to his client. On appeal his function is to point to trial errors, if such there be, and expound the applicable rules of law. In short he is to "put his client's best foot forward". This does not require nor warrant his advancing absurd or legally frivolous contentions. Counsel, not the client, must make the decisions as to how to present a case.[4] Indeed it is neither necessary nor desirable to present baseless contentions in performing his duty to expose deficiencies or frailties in the trial proceedings.

Even when his trained judgment tells him that the client's cause on appeal is well nigh hopeless, the court-appointed counsel performs an important function by making sure that the reviewing court understands all the salient facts and all the relevant legal authorities before reaching a final decision. Although an appellate court must view the record in the light most favorable to the appellee, appellant's counsel serves both his client and the Court by bringing all record facts to the reviewers' notice. Indeed an advocate performs a most important function when by his analysis he presents the critical issues and brings to the Court all the facts and law and is prepared to respond to questions.[5]

2. Few courts have stated this basic ethical duty more cogently than the Supreme Court of Nebraska:

> An attorney owes his first duty to the court. He assumed his obligations toward it before he ever had a client. His oath requires him to be absolutely honest even though his client's interests may seem to require a contrary course.

In re Integration of Neb. State Bar Ass'n, 133 Neb. 283, 289, 275 N.W. 265, 268, 114 A.L.R. 151 (1937).

3. The American Bar Association Canons of Professional Ethics and the Opinions under those Canons by the Committee on Professional Ethics and Grievances deal with these problems in detail. See *e. g.*, Canons 4, 5, 15, 16, 22, 44.

4. See generally Brookhart v. Janis, 86 S. Ct. 1245.

5. This view is not inconsistent with *Ellis;* rather it is based on a recognition that in *Ellis*, which was decided without briefs or argument, on a confession of error by the Solicitor General, the Supreme Court did not come to grips with the practical day-to-day problems posed by frequent applications for withdrawal of counsel.

This can often be an unenviable role for counsel after a jury has found the accused guilty. That this will be true in most appeals flows from the obvious fact that if the system of administering justice is properly run only a small proportion of appeals can be successful and even "winning" is most often no more than the chance for a new trial before another jury. But we must remember that the advocate is not a guarantor for his client and he does not endorse or vouch for either the client or his case. He presents all factors favorable to appellant including in some cases advocating a change in rules of law if rational arguments can be advanced in support of change. He may properly inform the Court of points his client urges but he is not required to press such points against his own informed professional judgment.

Counsel whose motion we now deny must remember that under our adversary system an appellate court cannot function efficiently without lawyers to present whatever there is to be said on behalf of an appellant, however meager his claims may be, so that the Court can make an informed appraisal.

The advocate's role and duty on appeal, as at trial, is not to "win" or set his client free, but to see that the case is tried and reviewed in accordance with a set of rules which have evolved from centuries of experience and which are still being changed. When the advocate has done that, he has discharged his duty. He should not be asked to do more and he ought not to do less. And when he has fulfilled that duty he is entitled to the protection of the court

against reckless and irresponsible attacks from the client whose conviction is affirmed.

Lawyers, like doctors, are not magicians and neither the Court nor the accused can expect advocates to do any more than to make the best of what they have to work with. In this role the lawyer must find his satisfactions and rewards not in dramatic "victories" but rather in doing his part to make sure the system of justice works according to its precepts and is alert to prevent injustice.

Applying these standards hereafter I would tend to deny the application of counsel to withdraw from what he may consider a "hopeless" case to the end that Appellants will no longer be told by us that they may continue an appeal pro se or abandon it, and that appointed counsel will complete each assignment on appeal rendering to client and court the professional assistance essential to disposition of cases. This, I conclude, is what the traditions of the profession and Supreme Court holdings of recent years, considered together, would seem to call for.

I do not suggest we should *compel* any lawyer, by judicial order, to act contrary to conscience; rather I would urge lawyers to approach the decision to withdraw in light of the purpose of appellate review, the need for assistance of professional advocates, and the role counsel should perform, conscious that he serves well his client, his profession, and the court when he has made certain the final judicial action is based on complete and accurate knowledge of the record and the law.

To suggest that counsel's role on appeal is to "cut his coat according to the cloth" is not to say he should perform the neutral role of the traditional *Amicus Curiæ*. Our choice—and the appellant's

—in these circumstances is an appeal with no lawyer or an appeal with a lawyer guided by these realistic concepts of his function.