Zedekiah SUGGS, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 20463.

United States Court of Appeals
District of Columbia Circuit.

Jan. 4, 1968.

Messrs. Robert E. May and Kirk W. Weinert, Washington, D. C., were on the motion.

Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Seymour Glanzer, Asst. U. S. Attys., and John G. Gill, Sp. Asst. U. S. Atty., entered appearances for appellee.

Before EDGERTON, Senior Circuit Judge, and DANAHER and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

In this opinion we hold that Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) precludes our affirmance in the present posture of this case. The brief filed by counsel appointed by this court to represent appellant was in fact a brief against appellant, and was given to the Government. We also consider the motion to withdraw, subsequently filed by counsel on the ground that they find no non-frivolous question, and conclude that in the circumstances of this case, and in view of the combination of *Anders* and the instructions to counsel approved by the Judicial Council, the motion to withdraw should be granted and substitute counsel should be appointed.

I

The appeal is from convictions of robbery and assault with a dangerous weapon. The statement of counsel appointed by this court, concurred in by the Government, sets forth that appellant was convicted of taking the property of the driver of a taxi in which appellant was a passenger, to wit his handkerchief, along with the false teeth that the driver happened to keep there. He was also convicted of assaulting the taxi driver and another person with a knife. His defense consisted of testimony that he was in an advanced state of intoxication at the time of the offense, 1:00 p. m. on October 30, 1965, and lacked criminal intent requisite for robbery.

The brief for appellant begins as follows:

STATEMENT OF QUESTIONS
PRESENTED

Court-appointed counsel have carefully reviewed the record in this proceeding, held conferences with Appellant, researched applicable law, made independent investigations concerning certain allegations by the Appellant and conferred with Appellant's court-appointed counsel at trial. Counsel have concluded that there is no non-frivolous question which counsel could present to this Court. However, the distinct possibility exists that a critical issue or issues may have been overlooked. Therefore, in an effort to comply with Johnson v. United States, 124 U.S.App.D.C. 29, 360 F.2d 844 (1966), and the concurring opinion of Judge Burger therein, and McCoy v. United States, 125 U.S.App.D.C. 202, 370 F. 2d 224 (1966), counsel submit this brief for Appellant, feeling that this procedure will bring the applicable facts and law of this case to the attention of the Court.

Counsel have no questions to raise on behalf of Appellant. Appellant, however, has specified the following questions:

    1. "Was counsel ineffective in failing to subpoena defendant's witness?"

There are eight questions, each set forth in quotation marks, copied from the specification of errors which appellant filed *pro se* to accompany his application for leave to appeal *in forma pauperis*.

In the Statement the brief summarizes, with transcript references, the evidence presented by the prosecution and defense.

In the Argument the brief has eight sections, each captioned with a quotation of the appellant's *pro se* specification of errors, and containing an opening paragraph setting forth what "Appellant" believes or contends. There then follows a discussion of the transcript and law, a discussion whose manifest thrust is to show there is no substance in the contention.

■■ The Statement to be Handed by the Clerk to Appointed Counsel (hereafter Statement for Counsel), as revised in January 1967 on instruction of the

Judicial Council, begins by making it clear that appointed counsel "should understand that he is not an amicus curiae." Parenthetically, we have stressed that point in our opinions, *e. g.*, Tate v. United States, 123 U.S.App.D.C. 261, 359 F.2d 245 (1966). We advise counsel not to conclude that there is no legally non-frivolous question until he makes a careful exploration of both facts and law.

In *Anders* Justice Clark, following a sentence that emphasizes that appointed counsel should be an active advocate rather than amicus curiae, appends this comment on District of Columbia practice, 386 U.S. 738, 744 n. 3, 87 S.Ct. 1396, 1400:

> For comparative purposes see Tate v. United States, 123 U.S.App.D.C. 261, 359 F.2d 245, and Johnson v. United States, 124 U.S.App.D.C. 29, 360 F.2d 844, which outline the practice followed in the District of Columbia. These guidelines are elaborated in more detail in a "Statement to be Handed by the Clerk to Appointed Counsel" which has been prepared by the Court of Appeals for the District of Columbia. We indicate no approval of the requirements set out in the statement or in the cases.

To a sensitive reader it is plain that the Supreme Court was disturbed by some aspect of our procedure, though the precise aspect was not specifically identified. It may be that the Court was troubled by the following passage contained at that time in our Statement for Counsel:

> As a general rule, the court will be greatly aided if appointed counsel remains in a case, even though he may be subjectively unimpressed with the merits of the available points. In appropriate cases he may fulfill his function by stating the facts, contentions and relevant authorities, and appearing at oral argument solely to answer questions if the Court has any. See McCoy v. U. S., 125 U.S.App.D.C. 202,

370 F.2d 224, October 27, 1966; Johnson v. U.S., 124 U.S.App.D.C. 29, 360 F.2d 844, September 15, 1966.

■ In all likelihood it was this expression in our January 1967 form of statement that guided counsel in this case in preparation of their brief. This court must take a full measure of responsibility for the fact that this kind of brief was filed, although we note that the brief in *McCoy* that was approved by the court, see McCoy v. United States, 125 U.S.App.D.C. 202, 370 F.2d 224 (1966), was one which argued for the overruling of decisions barring *McCoy's* reversal.[1] On further reflection we conclude that the passage quoted from Statement for Counsel, inserted in an effort to maximize the assistance of counsel, did veer toward the shoals of an amicus curiae position. In any event, with the instruction provided by *Anders* it is manifest that a brief like that filed by counsel in this case is not constitutionally adequate, even though the court purports to review the record independently. Counsel may not "brief his case against his client."

## II

We turn to the motion of appellant's counsel for leave to withdraw.

*Anders* makes clear that permission to withdraw may be requested by appointed counsel who "finds his case to be wholly frivolous, after a conscientious examination." The Court continued: "That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." Justice Clark adds: "This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as fur-

---

1. See Leventhal, What the Court Expects of the Federal Lawyer, 27 FED.B.J., 1, 3 (1967).

nished it by counsel." 386 U.S. at 744–745, 87 S.Ct. at 1400.

If we were free to pursue the motion to withdraw, we would have to set time for appellant himself to make his points.[2]

Unfortunately the brief filed by appellant's counsel—which may well be attributable to our Statement for Counsel, as already noted—does not meet the requirements in *Anders*. It cannot fairly be described other than as a "brief against the client." It is not surprising that appellee's brief stated that "counsel for the Government have concluded that they do not take issue with any of the arguments in appellant's brief."

Our Statement for Counsel did provide that an attorney who concluded that there was no non-frivolous issue could move to withdraw, assuming he filed "a supporting memorandum analyzing the case legally, citing record references to the transcript if one is available and also citing any case or cases upon which counsel relied in arriving at his ultimate conclusion." We thus provided for an amicus memorandum, but expressly instructed counsel that this should be available only to the court.[3]

■ Here, however, the brief of appointed counsel was transmitted to the Government, and indeed adopted by the Government. We cannot gloss this over as a mere technicality. The efforts of the courts in this field are to preserve an adversary system representing indigents.

■■ It is of importance in the interest of justice that the final judgment against an indigent should not be compromised by the possibility that a different result would have ensued if only he had the resources to retain his own lawyer, instead of being required to accept counsel selected by the court. Much depends on a system that avoids suspicion of such compromise, for reasons that include awareness that where there is a basis for such suspicion prospects of rehabilitation are stifled. Justice must not only be done, it must appear to be done. Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954). Appointed counsel is of course not required to accept a client's views by asserting points his good conscience would reject even at the loss of a handsome fee. At the same time counsel cannot file a brief against his client. It is one thing for a prisoner to be told that appointed counsel sees no way to help him, and quite another for him to feel sandbagged when the counsel appointed by one arm of the Government seems to be helping another to seal his doom. The courts of course are not required to honor all the indigent's wishes as to counsel.[4] But the courts must do what can reasonably be done to leave indigent prisoners with the impression that they have been dealt with fairly.

■■ To avoid any misunderstanding, we wish expressly to note that difficulties in our January 1967 Statement furnished appointed counsel have been obviated by the revision of that Statement approved by the Judicial Council of this Circuit in June 1967—set forth in the Appendix. But we are obliged to consider whether and to what extent the prior procedure is adequate under *Anders*. As already indicated we determine that it was not adequate.[5]

---

2. In one of appellant's communications to the court he points out that he has no transcript, which would be needed for any presentation on his part.

3. The memorandum submitted with the motion shall be lodged with the Clerk in a separate file in the Clerk's office, and shall be available only to the court unless otherwise directed. Counsel for appellant or petitioner shall mail a copy of the motion and a copy of the memorandum to appellant or petitioner, and shall certify on the copy lodged with the Clerk that he has complied with this requirement, giving the date of compliance.

If permission to withdraw is granted, the court will not (except in unusual circumstances) appoint other counsel, but will advise appellant or petitioner that he may employ counsel or proceed *pro se*.

4. McGill v. United States, 121 U.S.App. D.C. 179, 182–183, 348 F.2d 791, 794–795 (1965).

5. Under present procedure a motion to withdraw is limited to a statement that

## III

█ Under these circumstances we conclude that the interest of justice requires that we allow present counsel to withdraw, and appoint substitute counsel to proceed with the appeal. We have not initiated an inquiry as to whether there are any non-frivolous points in this case,[6] deeming that to be the duty of substitute counsel in the first instance. If he is similarly convinced that he cannot find a point that is not frivolous, he may seek leave to withdraw in accordance with *Anders*.

## IV

In Part IV we set forth some supplementary remarks. We respectfully submit that the dissent has failed to come to grips with *Anders*, which states outright—as the above quotations make clear—that the Constitution forbids us to affirm the judgment in the present posture of the case. Our doubts as to the permissibility of our entering an order at this time dismissing the appeal for lack of a non-frivolous question are underscored by the order in Fox v. Oregon, 388 U.S. 466, 87 S.Ct. 2129, 18 L.Ed. 1324 (1967), whereby the judgment in Oregon v. Fox, 421 P.2d 977 (Ore.Sup.Ct.1966)[7] was vacated and remanded for further consideration in the light of *Anders*.

█ It is said, why should not the Government "adopt" the "brief" filed by appointed counsel? The United States Attorney is the prosecutorial arm of Government, concentrating on law enforcement, and we intended no criticism of the determination that the "brief" of appointed counsel adequately furthered that objective. Our role as a court is as arbiter of the interests of Government and accused. We cannot successfully and constitutionally perform that function unless we consider a presentation devoted to arguments for the accused, leaving it to us to determine whether and to what extent they have merit. That is our understanding, at least, of the philosophy underlying *Anders*.

It may also be worth noting that if the Government had sought a summary disposition by motion for affirmance, it would have had the burden of showing that there was nothing in this case that could conceivably present a non-frivolous question. Now that burden has been shouldered by the lawyer appointed by this court to represent appellant. It is perhaps not unreasonable to suppose that if this course were approved as a precedent it would so embitter the indigent defendants involved as to undercut any possible rehabilitative objective of detention.

Our dissenting colleague indicates that he has initiated an inquiry into whether there are any non-frivolous points in the case—an inquiry we think that *Anders* has withdrawn from the courts at this stage—and he concludes there are no non-frivolous points.

Without making a determination at this juncture whether the following points are or are not non-frivolous, we

---

counsel has made a careful examination of the facts and law and desires to withdraw, and identifying the issues which appellant seeks to present and any other points considered by counsel. The confidential brief simultaneously lodged therewith is sent to appellant but not the Government, and the Clerk makes a copy of the transcript available to appellant, who is then given 30 days, or such additional time as may be requisite, to present his comments on the motion and brief. Our files contain some instances where the defendant has acquiesced in the position taken by his counsel.

6. At argument a question which a member of the court put forward for exploration had not been considered by appointed counsel. The Government announced readiness to file a memorandum on the point, but of course there was no adversary posture.

7. Fox's trial counsel was appointed to handle this appeal and resigned upon his showing that he could find no merit in the appeal. The court then appointed a Deputy Public Defender, who in turn was allowed to withdraw upon his showing that he could find no meritorious grounds for appeal. The defendant then filed a brief *pro se*. The Oregon Supreme Court held there was no merit in any of the defendant's contentions.

suggest that new counsel may wish to consider whether the following points, in addition to any others as he may ascertain, are at least "arguable * * * and therefore not frivolous".[8]

(1) Was the evidence such as to require a reasonable jury to have a reasonable doubt that appellant was so drunk that the specific intent necessary for the crime of robbery was negatived? In this connection we note that, as the dissent points out, the crime is asserted by the prosecution witnesses to have been committed at knife-point although a lady was sweeping the sidewalk a few feet away, and a man, who had been working on his car across the street, ran over and tried to reason with appellant. When appellant left the scene, he walked and did not run. His observed response shortly afterward to the approach of the police officer was to take a drink from his bottle.

(2) Did reversible error result from the actions of either counsel, or the trial judge, or both, in failing to raise and consider the possibility that appellant's impeachment by reference to prior convictions was inappropriate under the doctrine of Luck v. United States?[9]

a. Appointed counsel permitted defendant to take the stand without asking the judge to consider whether he would exercise his discretion to permit appellant's important testimony in exculpation of guilt to be heard without the prejudice of impeachment by prior conviction. Such a motion would obviously have been proper under *Luck*. In some cases at least, the court will reverse on direct appeal because of deficiencies of trial counsel apparent on the face of the record even though not rising to the constitutional dimension of negating effective assistance of counsel.[10]

b. The trial judge may have been brought into the problem, anyhow, by the action of the defense counsel who asked the trial judge to confirm on the record that counsel had warned the appellant (who believed it necessary that he take the stand) of the consequences of this course. The trial judge stated that he thought it appropriate for defense counsel to seek this protection, and he conducted a brief interview with appellant. But although the trial judge was thus assuming in effect the adequacy of what defense counsel had told appellant, he did not mention the possibility that his *Luck* discretion could be invoked before appellant took the stand. An opinion of this court has recently noted that in some cases it may be the duty of the trial judge to raise himself the question whether a *Luck*-type ruling is appropriate. (Tommie) Lewis v. United States, 127 U.S. App.D.C. 115, 381 F.2d 894 (June 29, 1967).

c. The prosecution sought and obtained, without objection, an instruction that guilt could be inferred from the proof of appellant's possession of recently stolen goods, "if appellant has failed to explain such possession to your satisfaction." Since the effect of this instruction is virtually to require the appellant to take the stand to avoid a guilty verdict, an opinion of this court states that this is uniquely the kind of case where *Luck* discretion should be exercised to consider whether he should be permitted to take the stand without impeachment from prior convictions that may lead a jury of average citizens to draw the impermissible conclusion that because the defendant committed other crimes, he probably committed the crime charged. (Fletcher) Smith v. United States, 123 U.S.App.D.C. 259, 359 F.2d 243 (1966). This factor may be of

---

8. Anders v. State of California, supra, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493.

9. 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).

10. Dyer v. United States, 126 U.S.App. D.C. 312, 379 F.2d 89 (1967). The possibility of reversible error because of the impeachment problem is to be distinguished from appellant's contention his trial counsel was ineffective in failing to produce a witness to corroborate his drinking, apart from the corroboration furnished by appellant's possession of a whiskey bottle at the time of his arrest.

relevance not only on the *Luck* issues referred to alone, but also on the possible question whether the prosecution may fairly be called upon to choose one course or the other—either to impeach through prior convictions, or to obtain an instruction on the inference available from possession of recently stolen goods—but not both.

(3) Did reversible error result from the giving of the instruction that guilt of robbery could be presumed from the possession of recently stolen goods, when the defense does not contest the identity of defendant as the man who took the goods, or that he may be convicted of a lesser included offense (taking without right), but only contests whether he had the specific intent necessary for robbery.

These points would not undercut the convictions on the assault counts, but the robbery conviction resulted in a longer detention.

\* \* \*

We end as we began by noting that we have not determined that these points are arguable, since we believe that *Anders* tells us that this is not our proper function at this juncture. Certainly we have not determined that the points listed above would be sustained after consideration on the merits. It would not be appropriate to engage in such determinations without advocacy on both sides of the questions. All we have done is to identify areas that new counsel may wish to explore in ascertaining whether there are any points that are arguable. We have done this to avoid any implication from silence in the face of the dissenting opinion that we acquiesce in the conclusion that it is uncontrovertible that there are no arguable questions.

▉▉ Neither *Anders* nor this opinion precludes counsel from concluding that, after diligent inquiry, he has found no non-frivolous question. It was our intention in *McCoy*, following the lead put forward in *Tommie Johnson*, to point out to counsel that little if any additional

effort would be involved in arguing a case to the court on the merits, braced for the possibility and perhaps likelihood of affirmance by order,[11] than in presenting a documented motion to withdraw. If new counsel concludes, however, that his professional obligations compel a motion to withdraw, that motion should not be served on the Government. An opportunity will be afforded to the defendant to present such contentions as he may deem meritorious with the benefit of a transcript, and without the handicap of disclosure to the Government of the analysis and appraisal of the counsel appointed by this court.

An order will be entered vacating the appointment of counsel and appointing new counsel.

So ordered.

## APPENDIX

[Rev. June, 1967]

STATEMENT TO BE HANDED BY THE CLERK TO APPOINTED COUNSEL

Counsel appointed by the Court of Appeals or the District Court to represent an indigent appellant or petitioner for allowance of appeal in a criminal case should understand that he is not an *amicus curiae*. His duty to the indigent is fully equivalent to his duty to a client who has retained him. He should not conclude that the appeal or petition presents no legally non-frivolous question until he has made a careful exploration of both the facts and the law of the matter; and adequate representation in this regard would include personal interviews if in the same circumstances you would consider this useful or desirable were you representing a private client. Ordinarily at least one interview by counsel would appear to be useful.

Counsel should, of course, not ask to withdraw as appointed counsel unless in the same circumstances he would insist on withdrawal if he had been retained. As a general rule, the court will be great-

---

11. See Rule 24(c) of the General Rules of this Court, added in April of this year.

ly aided if appointed counsel remains in a case, even though he may be subjectively unimpressed with the merits of the available points. See McCoy v. United States, 125 U.S.App.D.C. 202, 370 F.2d 224 (1966); Johnson v. United States, 124 U.S.App.D.C. 29, 360 F.2d 844 (1966).

If, after making a conscientious investigation, counsel then concludes that the appeal or petition presents no non-frivolous issues, he may seek leave to withdraw. Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (May 8, 1967); and see Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958). To accomplish this purpose, he should submit to the Clerk of this court for presentation to the court (without serving same on Government counsel) a motion showing that he has made a careful examination of the facts and the law, and that he desires to withdraw from representation of the appellant or petitioner. The motion should identify (1) the points which appellant or petitioner seeks to assert; and (2) any other matters which counsel has considered as a possible basis of appeal. The motion shall be accompanied by a brief in which it shall be counsel's purpose to make as effective a statement of such points and issues as is possible under the circumstances. This brief shall include relevant record references, and shall cite and deal with those cases which appear to bear upon the points in question.

The brief submitted with the motion shall be lodged with the Clerk in a separate file in the Clerk's office, and shall be available only to the court unless otherwise directed. Counsel for appellant or petitioner shall mail a copy of the motion and the brief to appellant or petitioner, and shall certify on the copy lodged with the Clerk that he has complied with this requirement, giving the date of compliance.

Upon receiving the motion and brief, the Clerk shall notify appellant or petitioner that he may, at any time within 30 days from the receipt of such notice, send to the Clerk of the court in writing any comments he may wish to make about the motion and brief; and that, at the expiration of such time, the court will consider the motion and brief, together with any such comments. This notification shall include the advice that, if the motion is granted, the appeal will ordinarily be dismissed.

Attached hereto is a copy of the Canons of Professional Ethics of the American Bar Association relating to the duty of counsel appointed to represent defendants in indigent cases. They must be read currently in the light of the availability of compensation (including expense reimbursement) under the Criminal Justice Act of 1964. The court appreciates the fact appointed counsel are shouldering a responsibility of the bar despite the modest sums made available by the Criminal Justice Act. Although in many cases that compensation may well be inadequate by reference to that customarily provided in private retentions, its availability can only serve to emphasize the exacting nature of the standards imposed by the Canons.

The Criminal Justice Act permits payment for services *necessarily* performed and you should recognize that if you are not familiar with criminal matters your preparation will likely require you to devote time and study which you will not be required to repeat in future cases. The Act measures payment in terms of what is necessary for an experienced practitioner to devote to a case.

Please note that under the Criminal Justice Act Plan for this circuit, all vouchers must be submitted within three months after the case has been terminated.

DANAHER, Circuit Judge (dissenting):

Since the majority agree with me that counsel appointed by this court should now be permitted to withdraw from further participation in this case, it may seem strange that I note a dissent. But I do dissent, not from that very proper

result, but from what has been written. Our colleagues who have not seen the record here are entitled to an explanation.

## I

Suggs was convicted of robbery, one count, and of assault with a dangerous weapon, two counts. The record shows that Suggs, a passenger in the rear seat of a taxicab, directed the driver, Snead, to "Stop here." Suggs then reached forward, placed one arm around Snead's head, pulled it back, and placing a knife at Snead's throat, said "This is it."

A Mrs. Thomas, sweeping her sidewalk a few feet away, saw the episode, screamed and ran to her door telling her husband to call the police. She then ran back down toward the cab.

One Joseph Lawrence was working on his car opposite the cab. Attracted by the screaming of Mrs. Thomas, he ran across the street. Fearing Suggs "might make a mistake and actually cut his throat," he first tried to reason with Suggs. The latter kept his knife at Snead's throat and "seemed to have been searching [Snead's] breast pocket." Lawrence finally "took a chance" and "grabbed" Suggs by the hand holding the knife. Lawrence then was badly cut, requiring a skin graft and several weekly visits for later hospital attention. Snead was cut on the chin, on one thumb and one finger. Suggs got out of the cab and went up the street, followed by Snead at a safe distance.

Meanwhile Officer Washington had responded to the police alert. As the officer approached Suggs, the latter took a drink from a small bottle. Suggs was placed under arrest and the officer recovered from him a three inch knife. Washington testified that when booking Suggs, he made out a "line-up sheet" during which Suggs coherently answered all questions. Further search at the precinct revealed that Suggs had on his person, Snead's false teeth, rolled up in Snead's handkerchief. These items had been in Snead's shirt pocket.

Although Suggs testified that he had been drinking and had no recollection of any of the events thus described, the jury obviously rejected his testimony.

Thus with three actual eyewitnesses, Snead, Lawrence and Mrs. Thomas, and later, the officer; the cuttings and Lawrence's hospital records, the jury could have found that the Government had overwhelmingly proved that Suggs was guilty as charged.

No requests to charge had been rejected. No exceptions to the jury instructions had been noted, indeed court-appointed trial counsel expressed himself as satisfied with the charge as given.[1] No ruling by the thoroughly experienced trial Judge Keech could be seen to have been prejudicially erroneous.[2] And surely, in usual course, we are not bound to notice claims of error raised for the first time on appeal.[3] Without more, and in light of the record we normally would have affirmed at once in the view I take of this case.

## II

And so it must then have seemed to the able attorneys we appointed. The District Court had granted the appellant's petition for allowance of an appeal. Suggs had submitted some eight allegations of error, largely charging ineffective assistance of trial counsel.[4] Counsel appointed by us conferred with Suggs on March 2, 1967[5] respecting the procedure we had outlined in McCoy v. United

1. Cf. FED.R.CRIM.P. 30.

2. Id., 52(b).

3. And see the Second's Circuit's en banc opinion in United States v. Indiviglio, 352 F.2d 276, 279, 280 (1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

4. A post-conviction challenge on a proper showing under § 2255 is, of course, open to Suggs. Fay v. Noia, 372 U.S. 391, 441, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

And not every so-called constitutional error, even if established, will require reversal. Chapman v. State of California, 386 U.S. 18, 22, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

5. Suggs was also then advised of his right to represent himself if he so desired.

States, 125 U.S.App.D.C. 202, 370 F.2d 224 (1966).[6] Counsel prepared their brief which was filed in this court on March 16, 1967, and then sent a copy of that brief to Suggs.

After my study of the appellant's points and the presentation by counsel, I will not say they had briefed the case "against" their client. They noted rather each and every claim advanced by Suggs and cited seriatim the decisions of this court which had already disposed of each such claim. It was not the brief which was "against" Suggs—the facts and the law were against him.

## III

Counsel here had honorably and conscientiously performed their duty as officers of the court. They told us they had concluded that "there is no non-frivolous question which counsel could present to this court," and they so decided, properly, according to the record here. They would have been bound so to advise Suggs if he had been a "rich" man seeking their professional judgment. They had reviewed the record, conferred with Suggs, researched the applicable law, conferred with the trial attorney, and had made independent investigations concerning certain allegations proffered by Suggs. (Compare Douglas v. State of California, 372 U.S. 353, 358, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) as cited in Anders, 386 U.S. at 741, 87 S.Ct. 1396.) And they so advised this court.

Even then, they had not sought to withdraw from the case, no doubt because of a willingness to comply with our Judicial Council imprecation that counsel remain in the case.[7]

## IV

Before this case came on for hearing on May 16, 1967, the Supreme Court on May 8, decided Anders v. State of California.[8] Our alert attorneys then read that counsel for the poor as well as those for the rich were to strive for "substantial equality and fair process"[9] where counsel acts in the role of an *active advocate*.

Of course in any such situation, the attorney would support his client's case to the best of his ability. Conversely, if he were bound to tell the rich man he had no case, his professional integrity would require that he do no less for the poor man. And as an officer of the court, once having been pressed into service, if counsel "finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw."[10] In all honor, a scrupulous attorney may do no less.

It is obvious that these attorneys here so conceived their duty, for two days after *Anders*, counsel on May 10, 1967 filed their motion to withdraw. They had already filed their brief and had furnished Suggs a copy of it. It is obviously understandable that having seen no prejudicial error in this record, they had already said what their professional judgment told them should be said, and they had nothing to add. Conscientiously they could file no brief to the contrary.

I deem it certain that it never occurred to them in view of the Federal Rules and the decided cases, that points upon which the trial judge had never been asked to rule could now be advanced as "arguably" supporting the appeal.

Thus counsel pointed to *Anders* which saw a defect in the procedure accorded by the *California* courts. California must give the *appellant* time "to raise any points that he chooses," the Court said.[11]

---

6. And see Johnson v. United States, 124 U.S.App.D.C. 29, 360 F.2d 844 (1966).

7. See Johnson v. United States, *supra* note 6, and Judge Burger's concurring opinion, 124 U.S.App.D.C. at 30–32, 360 F.2d at 845–847; cf. Ellis v. United States, 356 U.S. 674, 675, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958).

8. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

9. *Id.* at 744, 87 S.Ct. 1396.

10. *Id.* at 744, 87 S.Ct. at 1400.

11. But counsel here had already done that; finding no non-frivolous question themselves, *they raised the points Suggs specified*.

After he has done so, and with the *appellant's* points under scrutiny, *Anders* went on to say, *"the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous."* 386 U.S. at 744, 87 S.Ct. at 1400. (Emphasis added.)

To the extent that *Anders* here can be said to apply, after the court shall have examined the points the appellant desires to raise and then finds them frivolous, the court "may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned."[12]

And the points this appellant had specified are, on this record, frivolous[13] —and this appeal accordingly should be dismissed. That is what *Anders* says. It goes without further saying, in my opinion, that is the ground upon which the motion of counsel to withdraw should be granted.

The course upon which my colleagues have embarked, contrary to *Anders*, seems to be surfeited with mischief. No trial attorney need ask for a ruling, nor raise a claim and give the trial judge an opportunity to pass upon it, nor request an instruction, nor take exception to a charge as given. No matter how conclusively our precedents may seem to have foreclosed consideration of a point, the trial attorney need only sit back, secure in the expectation that if the outcome of the trial shall prove unsatisfactory, this court will appoint attorneys who can claim whatever they choose. Then, according to my colleagues, our court-appointed counsel may move to withdraw their appearance and put upon the court the burden[14] of combing the record for possible error.

Obviously, I do not read *Anders* as do my colleagues and so simply suggest that if the majority opinion becomes the law, we will really be busy.[15]

---

12. 386 U.S. at 744, 87 S.Ct. at 1400.

13. See 28 U.S.C. § 2111, and Chapman v. State of California, *supra* note 4, 386 U.S. at 22, 87 S.Ct. 824.

14. Chief Judge Bazelon in his letter to the Attorney General dated May 17, 1967, stated:

"Ninety-three percent of the criminal cases tried in the United States District Court for the District of Columbia are appealed to this court," [adding that]

"Our case load has risen from 48 to 78 cases per judgeship in the last few years and continues to increase."

15. The possibilities are substantial. In the first nine months of this year, there occurred in the District of Columbia, 4091 robberies, 2400 cases of aggravated assault, 10,535 burglaries and 5921 auto thefts. (Uniform Crime Statistics released by the Federal Bureau of Investigation, December 11, 1967.)