**Melvin GALE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 80-96.**

District of Columbia Court of Appeals.

March 19, 1981.

Before KELLY and FERREN, Associate Judges, and GALLAGHER, Associate Judge, Retired.*

ORDER AND JUDGMENT

PER CURIAM.

This case came on for consideration on the motion of court-appointed counsel for appellant to withdraw. The court has considered counsel's motion, appellant's motion for the appointment of new counsel, and the record on appeal and is of the view this case presents no nonfrivolous issue. Accordingly, it is

* Judge Gallagher was an Associate Judge of the court at the time this motion was submitted to the division. His status changed to Associate Judge, Retired, on February 27, 1981.

ORDERED that counsel's motion be granted, and it is

FURTHER ORDERED and ADJUDGED that the order on appeal be, and hereby is, affirmed.

FERREN, Associate Judge, dissenting:

My colleagues grant counsel's motion to withdraw—and affirm the denial of appellant's motion attacking sentence under D.C. Code 1973, § 23–110—on the basis of counsel's two-page memorandum asserting "there exist no non-frivolous issues raised by this appeal." I respectfully dissent, for I perceive at least two nonfrivolous issues on this record: (1) whether there was sufficient evidence for conviction of Burglary I, and (2) whether there was ineffective assistance of trial counsel. Accordingly, while I would grant counsel's motion to withdraw, I also would grant appellant's pro se motion for appointment of new counsel to pursue his case.

## I.

A jury convicted appellant of first-degree burglary and grand larceny. The court denied a motion for new trial and sentenced appellant to concurrent terms of 12 to 40 years and 3 to 9 years. On appeal, this court affirmed the convictions. *Gale v. United States*, D.C.App., 391 A.2d 230, *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1978).[1]

After this court had ruled, appellant filed a pro se motion under D.C. Code 1973, § 23–110 alleging three new grounds for relief: insufficiency of evidence for the burglary conviction, the trial court's failure sua sponte to instruct the jury on certain lesser included offenses, and ineffective assistance of counsel. After receiving a reply from the government, the trial court entered a memorandum order denying the motion without a hearing. Appellant filed a pro se notice of appeal; this court appointed counsel to represent him. *See* D.C. Code 1978 Supp., §§ 11–2601 to –2609. Counsel, however, filed a motion to withdraw—presumably on authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)—stating that the appeal presented no nonfrivolous issues. Appellant promptly responded with a motion asking for appointment of new counsel or leave to proceed pro se.

## II.

When a prisoner collaterally attacks a sentence for violation of statutory or constitutional rights, *see* D.C. Code 1973, § 23–110, he or she is entitled to a hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 23–110(c). *See Glass v. United States*, D.C.App., 395 A.2d 796, 809 (1978); *Pettaway v. United States*, D.C.App., 390 A.2d 981, 983 (1978); *Gibson v. United States*, D.C.App., 388 A.2d 1214, 1215 (1978) (per curiam); *Session v. United States*, D.C.App., 381 A.2d 1, 2 (1977). Here, the record suggests the possibility of relief.

A. To obtain a conviction for Burglary I, D.C. Code 1973, § 22–1801(a),[2] the govern-

---

1. We rejected appellant's contentions that a "comeup" order should be treated as a detainer triggering the protections of the Interstate Agreement on Detainers (IAD), D.C. Code 1973, §§ 24–701 to –705; that the trial court erred in admitting evidence of appellant's voluntary payments of restitution to the victims; and that the court erred in refusing to compel two defense alibi witnesses to attend the trial.

While the appeal was pending, appellant filed a pro se Motion to Vacate, Set Aside or Correct Illegal Sentence pursuant to D.C. Code 1973, § 23–110, asserting the applicability of the IAD. The trial court denied the motion on the ground that the pending appeal divested the Superior Court of jurisdiction.

2. D.C. Code 1973, § 22–1801(a) provides:

Whoever shall, either in the nighttime or in the daytime, break and enter, or enter without breaking, any dwelling, or room used as a sleeping apartment in any building, with intent to break and carry away any part thereof, or any fixture or other thing attached to or connected thereto or to commit any criminal offense, shall, if any person is in any part of such dwelling or sleeping apartment *at the time of* such breaking and entering, or entering without breaking, be guilty of burglary in the first degree. Burglary in the first degree shall be punished by imprisonment for not less than five years nor more than thirty years. [Emphasis added.]

ment must show that another person was on the premises at the time the defendant broke in. *United States v. Hammonds*, 138 U.S.App.D.C. 166, 168 & n.5, 425 F.2d 597, 599 & n.5 (1970). Specifically, one may be convicted of Burglary I "if any person is in any part of such dwelling or sleeping apartment at the time of such breaking and entering, or entering without breaking." D.C. Code 1973, § 22–1801(a); *see* Criminal Jury Instructions for the District of Columbia, No. 4.42 (3d ed. 1978). In this case, however, there is a serious question whether the government's evidence at trial was sufficient to prove this element of the crime.

Testimony established that on the day in question, the exterior basement door of the rooming house had been broken, and that several items of property were missing from the basement apartment. Willie Alford, a resident of the second floor of the rooming house, testified that he had heard someone climb the stairs to his floor, enter the room next to his, and then go down the stairs. Alford further testified that, through his window, he had seen a man leave the house carrying a partly covered TV set and place the set in a waiting car. Alford said he "did not know" whether other residents of the house "were there or not" at the time, and no other evidence showed that anyone else had been present. Alford had positively identified appellant as the thief from two different photo arrays

and at a lineup. Alford identified him again in court. Two other witnesses testified that appellant had been in the house on prior occasions. All witnesses testified they had not given appellant permission to enter on the day of the burglary.

While there can be no doubt that this evidence is sufficient for a conviction of Burglary II, D.C. Code 1973, § 22–1801(b),[3] it is not altogether clear whether the government established the Burglary I requirement that a person be present on the burglarized premises "at the time" appellant broke in. *Id.* § 22–1801(a). The United States Court of Appeals for the District of Columbia Circuit has held that similar evidence was sufficient to convict only of second-degree burglary. In *Hammonds, supra*, the court held the evidence insufficient for Burglary I because there was no evidence to show that any occupant of the building was present "when appellant entered the Elmore premises"; they were present only "when he was discovered." *Id.* at 168–69, 425 F.2d at 599–600.[4]

In the present case, if Willie Alford was in the rooming house at the time someone broke into the basement, the evidence would suffice for Burglary I. *See id.* But the record contains no direct evidence that Willie Alford (or anyone else) was present anywhere in the building at the time the burglar entered. The occupant of the basement apartment found the broken window

3. D.C. Code 1973, § 22–1801(b) provides:

Except as provided in subsection (a) of this section, whoever shall, either in the night or in the daytime, break and enter, or enter without breaking, any dwelling, bank, store, warehouse, shop, stable, or other building or any apartment or room, *whether at the time occupied or not*, or any steamboat, canalboat, vessel, or other watercraft, or railroad car or any yard where any lumber, coal, or other goods or chattels are deposited and kept for the purpose of trade, with intent to break and carry away any part thereof or any fixture or other thing attached to or connected with the same, or to commit any criminal offense, shall be guilty of burglary in the second degree. Burglary in the second degree shall be punished by imprisonment for not less than two years nor more than fifteen years. [Emphasis added.]

4. In *Hammonds, supra*, the appellant had been discovered in the evening hiding under a bed in a second floor apartment holding a knife. The court noted there was no evidence that any occupant of the house had been present when appellant entered the premises—only that all were present when he was discovered. *Id.* at 168–69, 425 F.2d at 599–600. There was no evidence concerning the times the occupants had entered the premises. The court stated that it was mere "surmise and conjecture" to infer that they had been present at the time of entry. *Id.* at 169, 425 F.2d at 600. The court added: "If the Government had evidence that either Elmore or the Bellingers were in the dwelling for a substantial period of time prior to discovering appellant's presence, that evidence should have been presented." *Id.* [Footnote omitted.]

and door when she returned from work, but she did not testify as to the time she had left the house or returned. Two other occupants testified that they had left for work at 7:30 a. m. and 8:05 a. m., respectively. Willie Alford testified that he had seen someone leaving with a TV set at about 9:50 a. m., but he did not testify as to the time the burglar entered or as to how long he had been home. *See id.* at 169, 425 F.2d at 600.

In a sufficiency case, of course, the court must take the evidence in the light most favorable to the government. *Crawford v. United States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967); *Curley v. United States,* 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1513, 91 L.Ed. 1850 (1947). The government is entitled, moreover to every legitimate inference from circumstantial as well as direct evidence. *See Johnson v. United States,* D.C.App., 293 A.2d 269, 271 (1972). Even so, there is a presentable argument that, in order to convict appellant of Burglary I, the jury would have had to enter "the realm of surmise and conjecture." *Hammonds, supra* at 169, 425 F.2d at 600. The record leaves open the possibility that the rooming house was empty between approximately 8:05 a. m. and 9:50 a. m., that the break-in occurred during that interval, and that Alford returned home in time merely to hear the burglar come upstairs, enter the room next door, and leave. Under that view of the evidence, there would have been no one in "any part" of the building "at the time of [the] breaking and entering." D.C. Code 1973, § 22–1801(a).

I express no view on the merits of this argument. I want to stress, rather, that appellate arguments of this sort are common, they have prevailed on occasion as in *Hammonds, supra,* and they even have succeeded in attracting this court to announce a "rigid rule of proof" for every case in the analogous context of grand and petit larceny. *Moore v. United States,* D.C.App., 388 A.2d 889, 891 (1978) (reiterates a "rigid rule of proof" for establishing the $100 value required for conviction of grand larceny); *Wilson v. United States,* D.C.App., 358 A.2d 324, 325 (1976) (same); *Boone v. United States,* D.C.App., 296 A.2d 449, 450 (1972) (same). The argument, therefore, cannot be deemed "wholly frivolous." *Anders, supra* 386 U.S. at 744, 87 S.Ct. at 1400.

B. There is, however, a stumbling block to appellant's collateral attack on the sufficiency of evidence. In *Atkinson v. United States,* D.C.App., 366 A.2d 450, 452 (1976), a collateral attack under D.C. Code 1973, § 23–110, we implied that the court will not hear a sufficiency claim under § 23–110: "This court, of course, affirmed the judgments of conviction thus bringing to an end any controversy respecting the identification procedures and the sufficiency of the evidence." The appellant in *Atkinson,* however, had not expressly raised the sufficiency claim on direct appeal, *see* 322 A.2d 587 (1974); thus, in response to the collateral attack we felt constrained to address the merits of that claim even while making the above statement. *See Atkinson, supra* at 452 n.9. Arguably, therefore, it is still an open question whether *Atkinson* requires rejection of a sufficiency claim made for the first time on collateral attack, even when the claim appears to have merit.[5]

If *Atkinson* forecloses a collateral attack on sufficiency of the evidence for appellant's Burglary I conviction, we would have to confront appellant's claim of ineffective assistance of trial counsel, based on failure to present this defense. The differences between convictions for Burglary I and Burglary II are obviously of consequence to a defendant; the permitted sentences (without regard to enhancement for prior crimes) are 5 to 30 years and 2 to 15 years, respectively. Thus, this case presents a serious question whether trial counsel, in failing to identify the sufficiency argument and request an instruction on the lesser included offense of Burglary II, was so

---

5. If the division opinion in *Atkinson* can be read to preclude any sufficiency claim under § 23–110, counsel could have argued that the en banc court should reject that position when sufficiency has not been argued on direct appeal. *See* D.C.App.R. 40.

"gross[ly] incompeten[t]" that he "blotted out the essence of a substantial defense." *Angarano v. United States*, D.C.App., 312 A.2d 295, 298 & n.5 (1973), *rehearing en banc denied*, 329 A.2d 453 (1974); *Bruce v. United States*, 126 U.S.App.D.C. 336, 339–40, 379 F.2d 113, 116–17 (1967).[6]

Appellate counsel, therefore, is plainly wrong when he asserts that "there exist no non-frivolous issues raised by this appeal."

### III.

My concern goes beyond this case. I recognize that many criminal appeals are frivolous; thus, I can understand the Supreme Court's dictum in *Anders, supra* 386 U.S. at 744, 87 S.Ct. at 1400, that withdrawal of appointed counsel—resulting in dismissal of the appeal—will be constitutionally permissible if the appeal is "wholly frivolous." The Court elaborated:

Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal. [*Id.*]

The difficulty with this approach, however, is substantial: although appointed counsel has a duty to make a "conscientious examination" of the record and to brief "anything in the record that might arguably support the appeal," *id., Anders* in practice invites counsel who sees no appellate issue to file either a short withdrawal memorandum, as he did here, or a comprehensive withdrawal brief.[7] Either alternative presents a problem. If this court receives a routine memorandum, we feel obliged to spend a substantial amount of time studying the record for a clue "that might arguably support the appeal." *Id.*[8] In trying to determine whether counsel has been faithful to the task, therefore, we either duplicate undocumented time spent by counsel or do what counsel should have done but did not. On the other hand, if we

---

**6.** If the reviewing court were to conclude that the sufficiency argument had no merit, the court, of course, could not hold counsel ineffective.

**7.** The United States Court of Appeals for the District of Columbia Circuit has elaborated, for its purposes, on the *Anders* requirement in *Suggs v. United States*, 129 U.S.App.D.C. 133, 140, 391 F.2d 971, 978 (1968):

If, after making a conscientious investigation, counsel then concludes that the appeal or petition presents no non-frivolous issues, he may seek leave to withdraw. *Anders v. State of California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (May 8, 1967); and see *Ellis v. United States*, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958). To accomplish this purpose, he should submit to the Clerk of this court for presentation to the court (without serving same on Government counsel) a motion showing that he has made a careful examination of the facts and the law,

and that he desires to withdraw from representation of the appellant or petitioner. The motion should identify (1) the points which appellant or petitioner seeks to assert; and (2) any other matters which counsel has considered as a possible basis of appeal. The motion shall be accompanied by a brief in which it shall be counsel's purpose to make as effective a statement of such points and issues as is possible under the circumstances. This brief shall include relevant record references, and shall cite and deal with those cases which appear to bear upon the points in question.

**8.** According to paragraph IV.D. of this court's Internal Operating Procedures, effective January 1, 1978, we shall "[d]ispose of no motion to withdraw as counsel based on the ground that the appeal has no merit without review of the record on appeal, including the reporter's transcript."

do receive a comprehensive brief, we wonder—and surely the appellant will, too—why counsel who found so much to discuss did not do so as an advocate instead of, in effect, as a judge ruling against the client.[9] In short, the *Anders* dictum typically forces either the court to undertake the role of the lawyer, or the lawyer to undertake the role of the court. This role reversal does not well serve the administration of justice.

The *Anders* approach, of course, is permissive, not mandatory; a court may require appointed counsel to brief each appeal as an advocate. The Supreme Court of Idaho has felt so strongly that the *Anders* dictum is "impractical and illogical" that the court no longer permits counsel to follow it. *State v. McKenney,* 98 Idaho 551, 552, 568 P.2d 1213, 1214 (1977) (per curiam). The court held "that once counsel is appointed to represent an indigent client during appeal on a criminal case, no withdrawal will thereafter be permitted on the basis that the appeal is frivolous or lacks merit." *Id.* Under *McKenney,* therefore, counsel is obliged to pick out appellant's strongest argument, however weak, and present it as forcefully as possible. The premise is twofold: if an appellant is entitled to appointment of counsel, then that appellant is entitled to the full benefit of the adversary system; and, in any event, the *Anders* compromise does not work well because it forces lawyers and courts to undertake ill-fitting roles.[10]

I would adopt the Idaho rule. It is true that the brief of a "wholly frivolous" appeal usually will seem hollow, and that it would be disingenuous for the court, if the case were argued, to berate appointed counsel for meritless arguments. I am convinced, however, that even for appeals that turn out to be frivolous, adversary procedure is much to be preferred over a process in which the appellate judge feels obliged to act as a lawyer and the appellate lawyer feels constrained to rule as a judge. At the very least, if the appeal is indeed frivolous, the adversary approach will reveal that truth far more effectively, with greater credibility, than a procedure in which the lawyer, in effect, enters a guilty plea against the client's wishes.[11]

But more important, as the present case illustrates, an appeal may be less frivolous than it initially appears. If counsel were required to brief the best argument available to the client, there is every reason to believe that zealous counsel would have perceived the arguments advanced above—or others. But when the court extends to counsel the *Anders* invitation—at least psychologically—to judge the client, that invitation is likely to dim counsel's perceptions about the client's chances and to compromise the role of the advocate.

Judges' views will differ as to how seriously to take the sufficiency argument in

9. Occasionally, this court, upon receiving a "thin" *Anders* memorandum, has taken an intermediate approach by granting counsel's motion to withdraw and appointing new counsel with instructions to provide a more comprehensive discussion of the case. In a recent case, for example, this court, in unpublished orders, rejected appointed counsel's first and second *Anders* briefs, then appointed new counsel for a third try. This approach, while perhaps saving court time, is, overall, an expensive and *excessively time-consuming use of appointed* counsel.

10. The court elaborated:
We further determine that if a criminal case on appeal is wholly frivolous, undoubtedly, less of counsel and the judiciary's time and energy will be expended in directly considering the merits of the case in its regular and due course as contrasted with a frag-

mented consideration of various motions, the consideration of which necessarily involves a determination of merits. On the other hand, if there is arguable merit in the appeal (a determination of which by appellate counsel is usually extremely difficult) counsel who has made a motion for withdrawal is also necessarily caught up in a conflict of interest between his duties toward his client and his duty toward the court of candor and truthfulness. [*Id.* at 552–53, 568 P.2d at 1214–15.]

11. The *Anders* approach leads to other unsettling questions. For example, if an attorney files an *Anders* brief on a direct appeal, has that attorney precluded collateral attack under D.C. Code 1973, § 23–110 on that record, on the ground that the court implicitly has reached and deemed frivolous all potential issues presented by that record?

this case, but that variation is the reason why in every case—and especially in those, such as sufficiency claims, where the appellant faces an uphill climb—the lawyer's talents, as advocate, are indispensable. The very difficulty of the argument entitles the appellant here to a lawyer, not—in effect—to a judge's aide who unilaterally concludes that the court should dismiss the client's appeal.

Some will argue that this court should retain the *Anders* approach simply because it is constitutional and saves the time of everyone concerned. I believe this view overestimates the savings and underestimates the principle at stake.[12] The adversary system has served the administration of justice long and well. It is the best system we know for producing results that are reliable, credible, and fair. Motions to withdraw under *Anders*, by contrast, are agonizing for the lawyer, awkward for the judge, and perceived as collusive by the appellant. The *Anders* compromise with our traditional adversary process has failed to justify itself. It permits a lesser standard of performance for appointed, in contrast with retained, counsel. This court should renounce it.

### IV.

Because I believe that counsel should be required to present the best possible argument on behalf of his client, I respectfully dissent from affirming the denial of appellant's motion attacking sentence. In order to give appellant the benefit of a fresh view, however, I would grant the motion to withdraw and appoint new counsel to pursue the appeal.

12. In 1980, counsel filed 26 *Anders* motions, accounting for less than 8% of this court's criminal appeals. The court has denied only one of the 15 motions ruled on to date. I believe the costs of adding this relatively small number of typically uncomplicated cases to the court calendar—usually the summary calendar—would be tolerable for everyone concerned, given the integrity of the system at stake.

By my estimation, adversary procedure would have little effect on the time of the court or counsel. The differences in the steps required to calendar a matter for a merits division of this court, in contrast with the current practice of processing the *Anders* docket through the monthly motions division, would be immaterial. Furthermore, the time spent on each case by counsel and the court—in the aggregate—should average the same under *Anders* and adversary approaches. For example, if counsel is too perfunctory in preparing the *Anders* motion, the court presumably compensates by working overtime as our rules require. *See* note 8 *supra.* On the other hand, if *Anders* counsel is thorough, the court's work will approximate what is required for the ordinary appeal.

The only material change that adversary procedure would require would be the involvement of the United States Attorney's office. Although that office has no role in the disposition of *Anders* motions, under adversary procedure the office would be actively opposing appeals. I believe, however, that the increase in the docket of that office would be small and well worth the marginal cost.