Lawrence D. JONES, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 21381.

United States Court of Appeals
District of Columbia Circuit.

Argued July 10, 1968.

Decided by Judgment Entered
July 11, 1968.

Opinion Rendered Sept. 3, 1968.

Mr. Richard T. Colman, Washington, D. C. (appointed by this court), for appellant.

Mr. J. Thomas Carroll, Jr., Atty., Department of Justice, of the bar of the Supreme Court of Michigan, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and Arthur L. Burnett, Asst. U. S. Attys., were on the brief, for appellee. Mr. James E. Kelley, Jr., Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and WRIGHT, Circuit Judge.

J. SKELLY WRIGHT, Circuit Judge:

On January 19, 1966, the proprietor of a jewelry store, Ralph Wilcox, was robbed. After a jury trial in July 1967, appellant was convicted of the robbery (22 D.C.CODE § 2901 (1967)) and sentenced to from three to nine years imprisonment. At trial the only evidence against appellant was his identification by Wilcox as the man who robbed him. On appeal he raises three issues: (1) that the delay by the police of seven months between the time Wilcox tentatively identified him from some photographs and the time of his arrest was prejudicial under Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965), and its progeny[1]; (2) that his identification by Wilcox at the police station violated his rights under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); and (3) that the admission into evidence of his prior conviction of assault was prejudicial under the doctrine announced by this court in Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).[2]

We hold that the admission of appellant's prior conviction was prejudicial error under *Luck* and accordingly remand for a new trial. Further, a strong showing has been made of a possible violation of *Ross* and therefore a full pretrial hearing should be held on that point before a new trial is had. In addition, a hearing should also be held regarding the identification of appellant by Wilcox to determine whether that identification

---

1. *See, e. g.,* Woody v. United States, 125 U.S.App.D.C. 192, 370 F.2d 214 (1966); United States v. Godfrey, D.D.C., 243 F. Supp. 830 (1965), *affirmed,* 123 U.S.App. D.C. 219, 358 F.2d 850 (1966).

2. Appellant also raises a claim of prejudice in that the trial judge's charge summarized only the prosecution's evidence. In view of our disposition, we need not reach this point. *But see* Wabisky v. D.C. Transit System, 117 U.S.App.D.C. 115, 326 F.2d 658 (1963). *See also* Jenkins v. United States, 117 U.S.App. D.C. 346, 349–350, 330 F.2d 220, 223–

224 (1964) (dissenting opinion), *reversed on other grounds,* 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965):

"* * * In a simple criminal case, there is little excuse for the trial court's exercising its common law right to comment on the testimony of witnesses. The jury is in as good a position as the judge, not only to remember their testimony, but to appraise it. So, when a trial judge undertakes the risk of trenching on the function of the jury, he must do so with the certain knowledge that his actions will be subjected to strict scrutiny. * * *"

accorded with the requirements of *Stovall*.

I

A defendant's rights under *Ross* are violated when there is an unreasonable lack of diligence on the part of the police in making an arrest which renders the defendant unable to remember and account for his whereabouts at the time of the crime. Where the delay is for a valid purpose, such as protecting the identity of an informer, that factor can be weighed against the prejudice to the defendant. Here, however, the record fails to show any such purpose.[3]

Briefly, there was testimony to the effect that in February 1966, one month after the crime, the complaining witness tentatively identified the appellant from some photographs. Thereupon the police and the FBI (called in because of possible interstate aspects of the robbery) both attempted to locate appellant. However, possibly through lack of communication (each believing the other was acting), their total effort over a seven-month period apparently amounted to no more than a few checks at his residence and at former places of employment, plus leaving a message with his mother that the police were looking for him and leaving a telephone number for him to contact the police which, according to his testimony, he attempted to do. During this seven-month period appellant lived at his mother's apartment in the District of Columbia and, as the police were aware, for most of the period worked as a licensed barber in a shop a few blocks from his home. Appellant eventually came into custody in September 1966, not on the instant charge, but through an arrest on another charge for which he was subsequently tried and acquitted. Appellant testified that, apparently because of the delay in learning of the charge against him, he was unable to reconstruct his activities on the day of the robbery.

On remand, in order that the principles announced in *Ross* may be applied by the District Court, there should be a full pre-trial hearing in which the Government is given an opportunity to justify the seven-month delay in appellant's arrest and in which appellant is given the opportunity to show the extent to which the delay prejudiced him. *Compare* United States v. Godfrey, D.D.C., 243 F.Supp. 830 (1965), *affirmed*, 123 U.S.App.D.C. 219, 358 F.2d 850 (1966).[4]

3. Though the extent of the delay is not the determining factor, a seven-month period is well within the scope of the *Ross* cases. *E. g.*, Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965) (seven months); United States v. Godfrey, *supra* Note 1 (four months). At trial the Government attempted to show that Jones was not prejudiced by the delay because he could not remember where he was at times not more than four months after the day of the robbery. However, this does not prove that Jones would have been unable to remember his activities on the day of the robbery had he been timely advised he was being charged with it. The presumption in *Ross* that a defendant would have remembered more had there been a shorter period between crime and arrest, 121 U.S.App.D.C. at 236, 349 F.2d at 213, places a burden of the Government to justify a delay as long as seven months.

4. In *Godfrey* an undercover narcotics agent filed a complaint two months after the alleged crime and then terminated his assignment; the police then looked for the defendant at his home, failed to find him there, advised federal and local authorities that he was wanted, and surveyed areas where he was likely to be found. The police failed to find him even though he was present within the District, residing in his mother's home, and was working "many of his evenings" at a nearby carry-out shop. He was apprehended two months later while travelling in New Jersey by New Jersey police. The District Court found that the reason the police could not find Godfrey was "not clearly ascertainable," and that the delay was "neither purposeful nor deliberate." 243 F.Supp. at 832. The judge held that the initial two-month delay before filing a complaint was reasonable to protect the agent, but that the subsequent two-month delay before arrest, taking into account the initial delay, was unreasonable. Since Godfrey's "ability to recall or to reconstruct his where-

## II

■■ The record in this case is not adequate to decide appellant's claim under Stovall v. Denno. That case held that a pre-trial identification used at trial violates due process when, considered in the "totality of the circumstances surrounding it," it is "unnecessarily suggestive and conducive to irreparable mistaken identification." 388 U.S. at 302, 87 S.Ct. at 1972. At the trial both the complaining witness and an FBI agent testified to the complaining witness' identification of Jones at the city jail, but with some contradictions. The complaining witness said that without prompting by police he picked Jones out of a room of about 40 people milling around. The FBI agent stated that he thought there were two rooms with perhaps as few as 20 people between them. On remand the pre-trial hearing on this issue should be directed to "the similarities and the differences, respecting appellant and those in the room with him, in age, height, weight, dress and other physical features." Wright v. United States, —— U.S.App.D.C. ——, 404 F.2d 1256 (decided January 31, 1968). The court should consider, as part of the totality of circumstances, the complaining witness' prior tentative identification of Jones from photographs, and whether the police at the later identification indicated to the complaining witness that the man he had thus tentatively identified was present in the room. Instructive here is Simmons v. United States, 390 U.S. 377, 383–384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968):

"* * * Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. * * * Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." (Footnotes omitted.)

## III

■ The *Luck* doctrine gives a trial judge, under 14 D.C.Code § 305 (1967), discretion to rule, before a defendant takes the stand, whether his prior convictions can be introduced to impeach his credibility. The twin concerns behind the doctrine are that the cause of truth may be "helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction," and that the "prejudicial effect of impeachment [may] far outweigh the probative relevance of the prior conviction to the issue of credibility." 121 U.S.App.D.C. at 156, 348 F.2d at 768. Here appellant attempted to raise the *Luck* issue to exclude his prior conviction of assault. The judge ruled that it was admissible, and when appellant took the stand the prior conviction was introduced.[5] Two issues are presented: first, whether the *Luck* doc-

abouts at the time the alleged offenses occurred" was prejudiced, the court found a violation of *Ross*. 243 F.Supp. at 832. On appeal this court affirmed, noting that "two months of [the delay] was not protected, in terms of reasonableness, by any purpose to advance the public interest in effective law enforcement." 123 U.S. App.D.C. at 221, 358 F.2d at 852.

5. The fact that the defendant takes the stand does not, of course, preclude his raising the *Luck* point on appeal. *See* Barber v. United States, 129 U.S.App. D.C. 193, 392 F.2d 517 (1968); Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967).

trine was properly invoked before the trial judge, and second, if it was, whether the judge erred in admitting the prior conviction.

■ Appellant's trial counsel made three attempts to raise the *Luck* issue. At a bench conference at the start of trial and again during the Government's case counsel raised the issue, pointing out that his trial strategy depended upon the judge's ruling. The judge stated in both instances that the point was premature. At the end of the Government's case the defense again re-urged the issue, informing the court of the nature of appellant's prior conviction.[6] The court, without questioning the defense as to the nature of appellant's proposed testimony, ruled that the prior conviction of assault was admissible. The Government contends that these defense efforts were insufficient to raise *Luck*. We disagree. The defense made it clear that it wanted the judge to consider the *Luck* issue; once the defense has brought the issue before the judge, even though the burden of persuasion remains on the defendant, there is a duty upon the judge to make sufficient inquiry to inform himself on the relevant considerations:

> "The burden of persuasion in this regard is on the accused; and, once the issue is raised, the District Court should make an inquiry, allowing the accused an opportunity to show why judicial discretion should be exercised in favor of exclusion of the criminal record. This, admittedly, places a very difficult burden on trial judges * * *."

6. The Government in its brief cites *Hood v. United States*, 125 U.S.App.D.C. 16, 365 F.2d 949 (1966), to support its contention that *Luck* was not properly raised. However, in addition to what is said in text, *Hood* is inapposite because there the defense did not apprise the judge of the nature of the defendant's prior convictions.

7. Among the inadequacies in the Government's case were the facts that none of

Gordon v. United States, 127 U.S.App. D.C. 343, 346–347, 383 F.2d 936, 939–940 (1967).

Perhaps the court here did not make the "on-the-record inquiry" contemplated by *Luck* (*Gordon, supra*, 127 U.S.App. D.C. at 346, 383 F.2d at 939) because the need for appellant's testimony was obvious. Admittedly, the Government had not introduced a shred of evidence against appellant other than the delayed identification by the complaining witness Wilcox.[7] Under the circumstances it was clear that the trial was reduced to a credibility match. Thus it was "important * * * for the jury to hear the defendant's story," even though that story consisted primarily of the assertion that he did not commit the crime and that because of the long delay in charging him with it he was unable to provide an alibi. *Luck, supra*, 121 U.S.App.D.C. at 157, 348 F.2d at 769; Brown v. United States, 125 U.S.App.D.C. 220, 222, 370 F.2d 242, 244 (1966).

■ Appellant, having taken the stand in response to the obvious need, was confronted with his prior record consisting of an assaultive crime. This is indeed "a classic illustration of a case in which 'the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility.'" *Brown, supra*, 125 U.S.App.D.C. at 223, 370 F.2d at 245. As Judge Burger stated in *Gordon, supra*, the crime of assault is only remotely, if at all, probative on the issue of veracity:

> " * * * Acts of violence * * * which may result from a short temper, a combative nature, extreme provoca-

the stolen jewelry was ever found, that none of the two or more alleged accomplices was ever found, that the only fingerprints found were not appellant's, and that the gun appellant allegedly used was never discovered. When to this is added the fact that Wilcox's identification of Jones from the photographs was only tentative and his in-person identification came eight months after the robbery, the weakness of the Government's case is apparent.

tion, or other causes, generally have little or no direct bearing on honesty and veracity. * * * "

127 U.S.App.D.C. at 347, 383 F.2d at 940. Appellant's prior conviction should have been excluded under the *Luck* doctrine.

Reversed for a new trial and for pre-trial proceedings.