**Franklyn WEAVER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 22172.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 3, 1968.

Decided Jan. 22, 1969.

Petition for Rehearing Denied
Feb. 28, 1969.

Certiorari Denied May 26, 1969.
See 89 S.Ct. 1785.

Mr. Raymond W. Russell, Washington, D. C., (appointed by this court) for appellant. Mr. Alan F. Wohlstetter, Washington, D. C., (appointed by this court) also entered an appearance for appellant.

Mr. Richard A. Hibey, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Charles A. Mays, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges.

McGOWAN, Circuit Judge:

The only issue presented by this appeal from a robbery conviction derives from *Luck v. United States*, 121 U.S.App. D.C. 151, 348 F.2d 763 (1965). In that case we construed the statute in this jurisdiction relating to impeachment of the credibility of witnesses in judicial proceedings by means of prior criminal conviction (14 D.C.Code § 305 (1967)) to be less than automatic in its operation, and to accord the trial court latitude to deny or limit such impeachment in a particular case if it thought the integrity of the truth seeking process would be correspondingly enhanced. An unsuccessful attempt to invoke the trial court's discretion often foreshadows an appellate claim of abuse said to require reversal. Such is the case here, for counsel presses upon us a claim that the judge below abused his *Luck* discretion. Counsel newly appointed for this appeal, however, has broadened the attack by urging that, at least as applied to the criminal defendant in this case, the statute is unconstitutional. For the reasons appearing hereinafter, we do not reach the merits of this latter contention, and appraising the trial court's action solely in terms of discretion, we find no abuse necessitating reversal.

I

The Government's case was strong indeed. The robbery victim testified that, having just left a restaurant in downtown Washington, he was accosted by two men who demanded his money. Even though he said he had none, the two men closed in on him in order to take his watch, which the victim claimed one of the two had noticed. The victim started shouting, but was beaten into semi-consciousness. He testified that his watch, which was never found, was taken forcibly from him. He identified appellant as one of his assailants.

The proprietor of the restaurant testified to hearing screams outside his place of business, and of going out the door and seeing the complainant lying on the ground with two men near him. One of these, said to be the appellant, appeared to be in the act of removing his foot from the victim. When the witness asked the two men what they were doing, they ran. The proprietor bluffed appellant into stopping by pretending to

have a gun, but appellant, upon realizing he had been tricked, ran again, only to be caught by the proprietor when appellant lost his balance and fell. A police officer testified that, arriving upon the scene (which still included the victim lying in one of the doorways to the restaurant), he arrested appellant for robbery in light of the account given him by the restaurant proprietor of what had taken place.

With the Government's case complete, appellant's counsel asked the court to exercise its *Luck* discretion and permit appellant to testify free of impeachment by prior conviction. The court was invited to hear appellant's story out of the presence of the jury. The court refused to do so, and counsel thereupon made a proffer on the record that appellant would have testified that "he was set upon and was chased and that there is either a case of mistaken identity or they have gotten the wrong man."[1] The prosecutor, presumably convinced that the Government's case would wither away in the blast of this story by appellant, insisted upon impeaching appellant by prior convictions.

The court excluded a 1961 Maryland assault conviction proposed to be shown by the Government, but it concluded to

permit use of a 1962 robbery conviction. After conferring with appellant, defense counsel stated that appellant would not testify if impeached, and asked the judge to reconsider. The trial judge did not relent. Appellant did not testify, nor did anyone else on his behalf. The jury's verdict of guilty was forthcoming promptly.

## II

The representations made to the trial court as to why it should deny impeachment by means of the prior robbery conviction included claims that (1) the five-year age of that conviction made it too remote in point of time to have significance and (2) it was inappropriate for such use because appellant was sentenced under the Youth Corrections Act. As to the former, we have remarked hitherto the relevance of the factor of remoteness to an informed discretion in this area, but we are unable to say that the five-year span here involved placed the robbery conviction beyond the pale. The second point raises quite different considerations, but, on the facts of this record, we cannot say that the circumstance of the sentence under the Youth Corrections Act placed this robbery conviction outside the ambit of those con-

---

1. The accused himself is, of course, the best source of information as to what he will testify to on the witenss stand. We have suggested that, by way of better informing the court's discretion prior to ruling on a *Luck* request, there is great merit in the practice of having him actually tell his story under oath out of the presence of the jury. As this court, speaking through Judge Burger, said in Gordon v. United States, 127 U.S.App.D.C. 343, 348, 383 F.2d 936, 941 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968):

> We recognize the undesirability of prolonging the trial unduly when the court is already confronted with requirements which work to that end, but in many cases the best way for the District Judge to evaluate the situation is to have the accused take the stand in a non-jury hearing and elicit his testimony and allow cross examination before resolving the *Luck* issue. Not only the trial judge, but both counsel, would

> then be in a better position to make decisions concerning the impeachment issue. * * *

The District Judge's personal evaluation of this suggestion is eloquently illuminated by the manner of his ruling on the request in this case:

> THE COURT: I am not going to go through all this two trial business. You can keep him off the stand if you want to or you can put him on and take your chances.

This comment seems to have been inspired by something other than the facts before him because, in almost the next breath, the judge said "[O]f course, under the evidence, I can't understand why the District Attorney would not take attempted robbery." The whole thrust of defense counsel's request that the judge hear appellant's story directly was that, in view of the missing watch, there was a question as to whether a robbery had been committed.

templated by Congress in the impeachment statute.[2]

Most of the discussion at trial centered around the defense contention that the robbery conviction should not be used because it did not bear upon veracity. The Government, conversely, argued that robbery involves stealing, that stealing bears upon veracity, and that, since appellant was denying guilt, the robbery conviction was relevant to the credibility of that denial. The court dealt with the question of the robbery conviction at length, and articulated with some care the basis for its ruling. It quite correctly took note of the special problems raised by prior convictions for the same crime as the one for which a defendant is currently on trial—problems which it thought might be ameliorated by admitting only one such prior conviction, as was the case here. On the question of whether robbery has any implications for veracity, the court fairly and accurately identified our comments on the subject in *Gordon, supra* note 1, and expressly relied upon them. We think it was entitled to do so.

It was, lastly, urged upon the trial court that appellant's testimony was of such a nature that the jury might reach an unjust verdict if it did not hear it. We have in the record, of course, only trial counsel's brief characterization of what that testimony would be, but we have no reason to believe that counsel summarized it inaccurately or failed to put it in its best light. Such as it was, it was all appellant had. And, so long as we subscribe to the principle and practice that, in our deep-seated horror of convicting the innocent, the Government may always be put to its proof that the accused is guilty beyond a reasonable doubt, one may wonder what governmental interest was served by keeping appellant's story from the ears of the jury by insisting upon the identification of its narrator as one with a criminal past. But, on this record, we cannot say that the shadow of possible error lay so darkly over these proceedings that this conviction must be reversed because of the court's failure to let appellant tell his story without being impeached by his prior conviction.

■  We are, thus, not persuaded by that branch of appellant's challenge which is rooted in the concept of trial court discretion. An appellate claim of abuse by a trial judge in an area where his first-hand impressions are important has always—and rationally so—an uphill road to travel.[3] This was not unknown to this court when it decided *Luck,* but *Luck* did make available to the trial judge an alternative which it had been assumed for fifty years he never had, namely the power to deny the weapon of impeachment to the prosecution in a case where the judge believes that the jury ought to have a chance to hear the defendant's story.

The degree of utilization of that power will inevitably vary with the temperament and attitudes of the individual judge—a phenomenon hardly peculiar to trial judges, as distinct from their appellate brethren. Appellate restraint in this area should, however, be matched by an intent on the part of the trial judge not to approach every *Luck* determination with an implacable purpose always to permit impeachment. *Luck* has endowed the trial judge with a new resource of flexibility in conducting the search for truth. It is to be administered by reference to that objective.

2. The trial transcript shows that trial counsel made only a passing reference to the fact of appellant's earlier sentence under the Youth Corrections Act, and appellant here has done no more. There has, in short, been no claim, either to the District Court or to us, that the provisions of the Youth Corrections Act which contemplate the setting aside of the conviction in certain contingencies (18 U.S.C. § 5021 (1964)) manifest a Congressional purpose that such convictions be not, at least under certain circumstances, used for impeachment. We know only that appellant was sentenced under the Youth Corrections Act for the earlier robbery and that he was on parole from that sentence at the time of the trial in this case.

3. See the Appendix to this opinion for a summary of our experience with the *Luck* issue to date.

## III

Appellant has, in this court, gone beyond the discretionary issue raised at trial and asked us to invalidate the statute as constitutionally deficient.[4] As a justification for mounting the constitutional attack nowhere expressly countenanced in *Luck,* he points to a supervening circumstance in the form of the Supreme Court's recent strictures upon the effectiveness of limiting instructions. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). That case did not involve impeachment by prior conviction but, rather, the effect upon one defendant of the introduction of a co-defendant's confession. The court reexamined and revised its earlier assumption in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), that it is " 'reasonably possible for the jury to follow' sufficiently clear instructions to disregard the confessor's extrajudicial statement that his co-defendant participated with him in committing the crime," and embraced the completely contrary rationale in these words:

[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations cannot be ignored. 391 U.S. at 126, 135, 88 S.Ct. at 1622, 1627 (1968).

Our statute may or may not be properly viewed in such a context.[5] But the jury's capacity to discriminate between a prior conviction as impeaching veracity, on the one hand, and as indicating a criminal propensity probative of guilt of the crime immediately charged, on the other, appears to have bulked large in the Congressional election to enact § 305 in the first place. That law in terms limits the purpose of admitting prior convictions to effect upon credibility, and it is, as a necessary consequence of that statutory limitation that there has been rigid judicial definition and enforcement of a duty upon the trial judge to give careful and complete instruction to the jurors that they must not consider the evidence as bearing upon guilt. If the psychological foundations for that instruction are inadequate, as the Supreme Court finds them to be in the circumstances of *Bruton,* then the constitutional status of the statute has perhaps been beclouded.[6]

---

4. This court has at least twice before been asked to rule on the constitutional validity of § 305. In Trimble v. United States, 125 U.S.App.D.C. 173, 369 F.2d 950 (1966), we declined to consider the argument, made for the first time on appeal, that impeachment by prior conviction under § 305 violated the due process clause. Similarly, in Robinson v. United States, No. 21947 (Decided Nov. 7, 1968) the court refused to reach the merits of an attack on § 305 on Sixth Amendment grounds because it was not raised in the District Court.

5. Compare Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). The constitutionality of the use of prior convictions in a criminal trial may be considered in a case now before the Supreme Court, Louisiana v. Cardinale, 251 La. 827, 206 So.2d 510, cert. granted 393 U.S. 959, 89 S.Ct. 388, 21 L.Ed.2d 372 (U.S. Nov. 21, 1968). In *Cardinale,* the defendant's entire written confession was, as required by state law, admitted into evidence against him, even though it contained a reference to a prior conviction.

6. We have pointed out before that the policy problems presented do not have to be resolved by resort to the Constitution. *See* Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 768–769 at n. 8. Both the American Law Institute and the Commissioners on Uniform State Laws concluded long ago that criminal defendants should not be impeached by prior convictions except by way of rebuttal of character evidence affirmatively adduced by the defense. Their Model Code of Evidence (Rule 106(3)) and Uniform Rules of Evidence (Rule 21), respectively, so provide. The existing Judicial Conference Advisory Committee on Federal Rules of Evidence is presumably addressing itself to the same issue, and its resolution of it will in all likelihood become the authoritative one insofar as the federal courts are concerned. At the state level there are several examples of legislative abandonment of impeachment by prior conviction in

■ We do not, as said above, accept appellant's invitation to weigh the statute in the constitutional balance in this case. On this record, even if we were to regard the issue as appropriately before us for resolution and, further, even if we were to find the statute wanting, no benefit could accrue to appellant. No finding of constitutional error in the respect in question could, on this record, overcome our belief that such error would, beyond any reasonable doubt, be harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Affirmed.

APPENDIX

Twenty-four cases appear to have reached this court since *Luck* in which the issue of impeachment by prior conviction has been raised on appeal and discussed in an opinion. Since *Luck* there was a period in which the court was affirming in many cases by orders without opinion; these are not reflected in this summary.

Four cases have been reversed:

Pinkney v. United States, 124 U.S.App. D.C. 209, 363 F.2d 696 (1966), held that the trial judge abused his discretion by allowing the prosecutor to impeach a second degree murder defendant with prior convictions for the petty offenses of vagrancy, disorderly conduct and soliciting prostitution.

Brown v. United States, 125 U.S.App. D.C. 220, 370 F.2d 242 (1966) reversed in part because the trial judge "did not base his ruling on * * * individualized considerations" and thus could not be said even to have exercised his discretion.

Barber v. United States, 129 U.S.App. D.C. 193, 392 F.2d 517 (1968), reversed because the trial judge had "denied defendant's motion to exclude his prior record without, so far as the record shows, invoking the *Luck* criteria."

Kansas (Kan.Stat.Ann. § 60–421 (1964), Pennsylvania (19 Pa.Stat.Ann. § 711

Jones v. United States, 131 U.S.App. D.C. 88, 402 F.2d 639 (opinion rendered Sept. 3, 1968), reversed because the trial court allowed the defendant to be impeached by a prior conviction for assault, a crime characterized as not going to veracity.

Thus, of the four reversals, two (*Brown* and *Barber*) were cases where it was patent from the transcript that the trial court had in reality declined to exercise its discretion at all, and the other two were situations where the nature of the prior convictions impaired their relevance for impeachment purposes.

Of the affirmances, in eight the court never went to the merits of the *Luck* contention because the defendant had not properly invoked the trial judge's discretion; in six cases the court affirmed even though it was somewhat critical of the manner in which the trial judge handled the issue; and twice the court has suggested that the case might have been reversed if the trial had occurred after *Gordon*. A summary of these affirmances follows:

Smith v. United States, 123 U.S.App. D.C. 259, 359 F.2d 243 (1966) (Trial prior to *Luck* and trial court's discretion not invoked).

Walker v. United States, 124 U.S.App. D.C. 194, 363 F.2d 681 (1966) (*Luck* issue not raised at trial).

Hood v. United States, 125 U.S.App. D.C. 16, 365 F.2d 949 (1966) (Trial judge's discretion not properly invoked).

Trimble v. United States, 125 U.S.App. D.C. 173, 369 F.2d 950 (1966) (*Luck* objection not made by defendant, and in any event, trial judge on his own properly exercised *Luck* discretion).

Stevens v. United States, 125 U.S.App. D.C. 239, 370 F.2d 485 (1966) (Affirmed *per curiam;* Fahy, J., dissenting on grounds of *Luck* even though not raised below).

Harley v. United States, 126 U.S.App. D.C. 287, 377 F.2d 172 (1967) (Trial

(1964)), and the Virgin Islands (V.I. Code, Title 5, § 835 (1964)).

judge's discretion under *Luck* not properly invoked).

Carter v. United States, 126 U.S.App. D.C. 370, 379 F.2d 147 (1967) (Tried before *Luck,* and record as a whole does not justify reversal).

Lewis v. United States, 127 U.S.App. D.C. 115, 381 F.2d 894 (1967) (*Luck* issue not raised at trial, but the court commented that "[I]n the fair administration of justice some obligation is imposed by *Luck* upon the trial court and the prosecution, and the time may come when we shall not feel bound to ignore its principles merely because the defense does so.").

Gordon v. United States, 127 U.S.App. D.C. 343, 383 F.2d 936 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). (*Luck* issue not properly raised below; adopted more stringent standards for convictions for similar conduct; recommended having accused take stand out of presence of jury before determining *Luck* issue).

Brooke v. United States, 128 U.S.App. D.C. 19, 385 F.2d 279 (1967) (No abuse of *Luck* discretion; defendant would have told same story as did a defense witness).

Laughlin v. United States, 128 U.S. App.D.C. 27, 385 F.2d 287 (1967) (No abuse of *Luck* discretion).

Payne v. United States, 129 U.S.App. D.C. 215, 392 F.2d 820 (1968) (Result may well have been different if tried after *Gordon*).

Williams v. United States, 129 U.S. App.D.C. 332, 394 F.2d 957 (1968), cert. denied, 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (U.S. Dec. 9, 1968) (No abuse of *Luck* discretion, but instructed trial court to set forth considerations more fully on the record; result might well have been different if tried after *Gordon;* concurring opinion indicates *Luck* issue better determined before defendant testifies).

Evans v. United States, 130 U.S.App. D.C. 114, 397 F.2d 675 (1968) (No abuse of *Luck* discretion since defend-

ant did not show a "special need for the jury to hear his version of the events"; treatment of *Luck* issue could well have been more comprehensive, and "must not be, as here, partly off the record as by informal conference in Chambers"; Bazelon, J., dissenting on ground of abuse of *Luck* discretion).

Jones v. United States, 131 U.S.App. D.C. 212, 404 F.2d 212 (Decided Oct. 17, 1968) (No abuse; Wright, J., concurring because issue of similar nature of crime not pointed out to trial judge).

Smith v. United States, 132 U.S.App. D.C. 131, 406 F.2d 667 (Decided Dec. 13, 1968) (Although some question whether trial counsel "meaningfully invoked" the judge's discretion, a review of the record reveals "the trial judge gave due consideration to the policy underlying *Luck*.").

The following four decisions are unprinted *per curiam* opinions which found no abuse of discretion:

Byrd v. United States, No. 21,534 (Decided July 31, 1968) (Impeachment by petit larceny convictions allowed).

Henderson v. United States, No. 21,602 (Decided July 31, 1968) (After excluding an older housebreaking conviction, trial judge did not abuse discretion by allowing impeachment by a more recent housebreaking conviction).

Robinson v. United States, No. 21,774 (Decided Oct. 8, 1968) (After "careful inquiry" trial judge allowed impeachment by a petit larceny conviction).

Robinson v. United States, No. 21,947 (Decided Nov. 7, 1968) (No abuse of discretion found, although critical of trial court for being "perhaps unduly preoccupied with its own views of appellant's credibility as distinct from those to be formed by the jury").

Although not included in the count above, see also Suggs v. United States, 129 U.S.App.D.C. 133, 391 F.2d 971 (1968) (Where as a practical matter defendant must take stand to explain possession of recently stolen goods if he is

**1276**

to avoid conviction, the failure of either trial counsel or the judge below to examine the *Luck* issue raised a non-frivolous issue for appeal) and Suggs v. United States, 132 U.S.App.D.C. —, 407 F.2d 1272 (decided Jan. 8, 1969) (where defendant at trial "made no request for exclusion" and in fact "opened [this] line of inquiry * * * to bolster his claim of exculpation because of intoxication," the trial judge was under no duty *sua sponte* to exclude prior convictions).