### UNITED STATES of America
### v.
### Joseph COLEMAN, Appellant.
### No. 22316.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 27, 1969.

Decided July 11, 1969.

Tamm, Circuit Judge, dissented.

Miss Paula R. Wirtzman, with whom Mr. Stephen L. Gelband, Washington, D. C., (both appointed by this court) was on the brief, for appellant.

Mr. Robert S. Bennett, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before BAZELON, Chief Judge, and TAMM and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

On August 20 or 21, 1967, an apartment was burglarized, and a saxophone and other items were purloined.[1] On August 21, a man identifying himself as Wilson Terry pawned the saxophone, signing "Wilson Terry" on the pawnbroker's copy of the ticket evidencing the transaction. The pawnbroker's appraiser spotted appellant in the pawnshop on the following September 18 and, believing him to be the man who had brought the

---

1. The exact time of the housebreaking and theft—a matter of some importance here, see Travers v. United States, 118 U.S. App.D.C. 276, 280, 335 F.2d 698, 702 (1964)—is uncertain. The occupants of the apartment were out of the city and, by prior arrangement, a friend checked the apartment periodically. "[E]verything was fine" on the August 20 check, but the check on the next day disclosed that the apartment had been broken into and articles stolen therefrom.

stolen saxophone in, promptly called the police.[2] After conversations with appellant and the manager of the pawnshop, who made a similar identification, the police officers placed appellant under arrest. A search of his person produced a copy of the pawn ticket for the saxophone and identification cards bearing the name "Wilson F. Terry."

Indicted in counts of housebreaking[3] and grand larceny,[4] appellant stood trial in the District Court before a jury. The real Wilson F. Terry testified that he had lost the identification cards, and denied signing the "Wilson Terry" on the pawn ticket. A handwriting expert expressed the opinion that appellant had made that signature,[5] and the two employees of the pawnshop reiterated their identifications of appellant as the party who had pawned the saxophone.

As is evident, the Government's theory that appellant had broken into the apartment and filched the saxophone was based wholly upon an inference from its possession by appellant shortly after it was stolen. Appellant offered no witnesses in his own behalf and, for reasons hereinafter elucidated, did not take the witness stand himself. The prosecuting attorney argued to the jury that it should, and the

trial court charged the jury that it might, infer appellant's guilt of either or both of the offenses charged from unexplained possession of the saxophone so closely on the heels of its theft from the apartment.[6] The jury convicted on both counts, and the court sentenced appellant to imprisonment for a maximum term of 12 years.

■■ The principal argument on appeal, and the only contention meriting discussion,[7] is that the court misapplied our *Luck*[8] doctrine in ruling on appellant's request for testimonial immunity from impeachment by the use of criminal convictions which he had accumulated. We held in *Luck* that trial judges have discretion to limit or ban impeachment of that type where ."the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant foregoing that opportunity because of the fear of prejudice founded upon a prior conviction."[9] Appellant's challenge thus commands our scrutiny of the record with a view to ascertaining whether the teachings of *Luck* and its progeny[10] were honored in this case.

■ At the close of the Government's case in chief, defense counsel[11] ap-

---

2. In the meanwhile, the theft of the saxophone had been reported, and the police had requested notification in the event that the man who had pawned it returned.

3. D.C.Code § 22–1801 (1967 ed.), since amended (Supp. II 1969).

4. D.C.Code § 22–2201 (1967 ed.).

5. This witness concluded that appellant had also made a similar signature on one of Terry's identification cards which had been removed from appellant's person after arrest.

6. See, *e. g.*, Pendergrast v. United States, 135 U.S.App.D.C. 20, at 30, 31, 416 F.2d 776, at 786–87 cert. denied 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969).

7. Appellant presents two additional claims. One relates to the court's instructions to the jury on the inference permitted from appellant's unexplained possession of the recently stolen saxophone, but the several points appellant seeks to make are foreclosed by our decision in Pendergrast v. United States, *supra* note 6. The in-

struction did not meet all of the standards we recently laid down in *Pendergrast*, but there was no objection to it and we do not consider its shortcomings such plain error as to justify reversal. See Fed.R. Crim.P. 30; Singer v. United States, 380 U.S. 24, 38, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965).

Appellant's remaining contention focuses on two references by the prosecuting attorney to "fingerprint" evidence; handwriting, but no fingerprint, evidence was introduced at the trial. The references were obviously inadvertent and in our view too innocuous to mislead the jury or to otherwise affect substantial rights. See Fed.R.Crim.P. 52(a).

8. 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).

9. *Id.* at 156, 348 F.2d at 768.

10. See Weaver v. United States, 133 U.S. App.D.C. 66, 71–72, 408 F.2d 1269, 1274–1275 (1969).

11. Not his counsel on appeal.

proached the bench and informed the trial judge that he "would like to put the defendant on the stand if we can have the benefit of the *Luck* decision. In other words, what I am interested in is not having his record spread before the jury." Without further inquiry of any sort, the trial judge, citing our *Gordon* [12] holding, stated that "[a]nything that has to do with cheating and stealing is admissible," and proceeded at once to examine appellant's criminal record. Going down the list of past offenses, he excluded one,[13] but ruled that the Government could use a conviction for housebreaking and larceny, an additional larceny conviction, and three convictions of false pretenses. The judge then concluded the inquiry, appellant elected not to testify and, as we have observed, the case went to the jury on the Government's evidence alone.[14]

In *Gordon*,[15] we held that "as a rule of thumb" [16] convictions evidencing dishonest conduct go to testimonial credibility while those involving assaultive or violent conduct do not,[17] and the trial judge made that distinction here. *Gordon* also emphasized other considerations highly relevant to an adjudication on impeachment by prior convictions, but we find no indication that they were assigned a role in this case. One such consideration is the remoteness, in point of time, of a conviction;[18] another is its similarity to the offense for which the accused is on trial.[19] Still another is the importance, in the search for truth, of giving the triers of fact the benefit of the accused's testimony.[20] Here the housebreaking and larceny conviction came in 1959; when the others occurred we know not. Moreover, two of the convictions the judge would have let in were for larceny, one of the offenses with which appellant was charged. And notwithstanding the judge's elimination of some of the convictions, we discern no effort to weigh the prejudicial effect of impeachment by those remaining upon such testimonial contribution as appellant could have been expected to make.

Even more importantly, we have recognized, from early in the *Luck* era, that "where inferences founded upon unexplained acts are likely to be heavily operative, the court's discretion to let the jury hear the accused's story, unaccompanied by a recital of his past misdeeds, may play an important part in the achievement of justice." [21] In the case at bar, appellant's version of the affair, unembarrassed by mention of his previous difficulties with the law, could very

---

12. Gordon v. United States, 127 U.S.App. D.C. 343, 383 F.2d 936 (1967), cert. denied 390 U.S. 1029, 88 S.Ct. 1421, 20 L. Ed.2d 287 (1968).

13. Possession of a prohibited weapon. Appellant's record also revealed charges of destroying private property and attempted housebreaking of which he was found not guilty.

14. Immediately after the *Luck* ruling, the trial judge directed appellant's counsel to make his opening statement, the privilege of making which he had earlier reserved. Defense counsel then informed the jury that "it is our contention that the defendant did not pawn the saxophone nor did he enter the house and take it out." The court then took a recess, and when it reconvened defense counsel stated that he rested. It seems obvious that during the recess appellant made the decision that he would not undertake to testify under the conditions the judge's *Luck* ruling made possible.

15. Gordon v. United States, *supra* note 12.

16. 127 U.S.App.D.C. at 347, 383 F.2d at 940.

17. *Id.*

18. *Id.* See also Luck v. United States, *supra* note 8, 121 U.S.App.D.C. at 157, 348 F.2d at 769.

19. 127 U.S.App.D.C. at 347, 383 F.2d at 940.

20. *Id.* See also Luck v. United States, *supra* note 8, 121 U.S.App.D.C. at 156–157, 348 F.2d at 768–769.

21. Smith v. United States, 123 U.S.App. D.C. 259, 261, 359 F.2d 243, 245 (1966). See also Gordon v. United States, *supra* note 12, 127 U.S.App.D.C. at 348 n. 11, 383 F.2d at 941 n. 11; Suggs v. United States, 129 U.S.App.D.C. 133, 138–139, 391 F.2d 971, 976–977 (1968). Compare Barber v. United States, 129 U.S.App. D.C. 193, 195, 392 F.2d 517, 519 (1968).

well have been crucial. The success of the prosecution depended entirely upon the strength of an inference from appellant's possession of the stolen saxophone that he was the housebreaker who stole it. Unless the fact of possession was refuted or satisfactorily explained—and ostensibly only appellant could possibly do either—that fact was "likely to be heavily operative" against him.

The Government argues, however, that appellant should not benefit from an application of *Luck* principles because appellant's trial counsel made no representation as to what appellant's testimony would be, or as to the unavailability of other witnesses to establish his defense. We have said many times that it is for defense counsel to invoke *Luck*,[22] and to invoke it in a meaningful way,[23] and this, of course, will necessitate initially some explanation of the theory and testimonial details of the defense where, as usually is

the case, they cannot otherwise be made known to the court.[24] At the same time, we have admonished that, once the *Luck* issue is raised, defense counsel's shortcomings [25] do not mitigate the need for an exercise of judicial discretion.[26] Certainly there is nothing to commend a requirement that defense counsel delineate that which is already plainly apparent to all concerned.[27]

When, after the Government rested in this case, appellant's attorney requested the *Luck* ruling, it was manifest that the Government had hung its entire effort on the inference permitted by an unexplained possession of recently stolen property. It was equally clear that the Government in its endeavor to win the verdict, was forced to ask for an appropriate instruction on that score. In that setting, appellant's proposed testimony, if it was to be helpful at all, had to be directed toward an explanation of his possession of the

22. Smith v. United States, *supra* note 21, 123 U.S.App.D.C. at 261, 359 F.2d at 245; Walker v. United States, 124 U.S.App.D.C. 194, 195, 363 F.2d 681, 682 (1966); Covington v. United States, 125 U.S.App.D.C. 224, 225, 370 F.2d 246, 247 (1966); Stevens v. United States, 125 U.S.App.D.C. 239, 370 F.2d 485 (1966); Harley v. United States, 126 U.S.App.D.C. 287, 288, 377 F.2d 172, 173 (1967); Lewis v. United States, 127 U.S.App.D.C. 115, 381 F.2d 894 (1967); Suggs v. United States, *supra* note 21, 129 U.S.App.D.C. at 138–139, 391 F.2d at 976–977. See also Trimble v. United States, 125 U.S.App.D.C. 173, 174–175, 369 F.2d 950, 951–952 (1966).

23. Although there was a *Luck* request at trial, we held that the judge's discretion was insufficiently invoked in Hood v. United States, 125 U.S.App.D.C. 16, 17–18, 365 F.2d 949, 950–951 (1966); Evans v. United States, 130 U.S.App.D.C. 114, 117–119, 397 F.2d 675, 678–680 (1968); Smith v. United States, 132 U.S.App.D.C. 131, 132, 406 F.2d 667, 668 (1968). See also Gordon v. United States, *supra* note 12, 127 U.S.App.D.C. at 345, 383 F.2d at 938; Jones v. United States, 131 U.S.App.D.C. 212 at 216, 404 F.2d 212 at 216 (Oct. 17, 1968) (concurring opinion).

24. See Hood v. United States, *supra* note 23, 125 U.S.App.D.C. at 18, 365 F.2d at 951; Payne v. United States, 129 U.S.

App.D.C. 215, 216, 392 F.2d 820, 821 (1968); Evans v. United States, *supra* note 23, 397 F.2d at 678–679.

25. It is not, however, clear here that "the District Judge afforded defense counsel abundant opportunity to present his contentions concerning the *Luck* issue." Evans v. United States, *supra* note 23, 397 F.2d at 679. Rather, following appellant's bare *Luck* request, the judge promptly made his ruling without any sort of inquiry beyond the criminal record and immediately thereafter called upon defense counsel for his opening statement. See note 14, *supra*.

26. Lewis v. United States, *supra* note 22; Gordon v. United States, *supra* note 12, 127 U.S.App.D.C. at 346–347, 383 F.2d at 939–940; Suggs v. United States, *supra* note 21, 129 U.S.App.D.C. at 138, 391 F.2d at 976; Jones v. United States, 131 U.S.App.D.C. 88, 92, 402 F.2d 639, 643 (1968). See also Stevens v. United States, *supra* note 22, 125 U.S.App.D.C. at 240, 370 F.2d at 486 (dissenting opinion); Williams v. United States, 129 U.S.App.D.C. 332, 339, 394 F.2d 957, 964, cert. denied 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (1968) (concurring opinion); Evans v. United States, *supra* note 23, 397 F.2d at 681, 683 (dissenting opinion).

27. Compare Jones v. United States, *supra* note 26, 402 F.2d at 643.

saxophone, or toward a denial of that possession and an explanation as to how he came to have the pawn ticket. Indeed, in the same monologue which contained his dispositoin of the *Luck* issue, the trial judge said to defense counsel: "What is your defense? He didn't do it and didn't go in there and didn't have it. That is all you can say." And we realize, as we think the trial judge also should have done, that all too frequently the innocent have no witnesses other than themselves who can · testify on such matters.

We hold that the circumstances here emphatically enough called upon the trial judge to strike the balance that *Luck* demands and, in the process, "to make sufficient inquiry to inform himself on the relevant considerations." [28] We mean, not that all impeachment by appellant's past record was necessarily to be ruled out, but that a suitable exploration and a sound discretionary exercise became requisite. But since, in some though certainly not in all respects, the Government's case was strong,[29] we are not prepared to say that the judge's omission to do so entitles appellant to a new trial. Any sound disposition of this litigation must follow an inquiry as to what result a proper exercise of *Luck* discretion would have produced, and whether the failure to achieve that result prejudiced appellant.[30] Such a probe, in turn necessitates precise knowledge as to what appellant would have said from the witness stand and, in somewhat smaller degree, as to the availability of other witnesses who could have said the same thing.

Accordingly, we remand this case for a *Gordon*-type hearing [31] in which these and any other relevant points may be investigated.[32] Unless the trial judge, after considering all the circumstances, old and new alike, can say "with fair assurance" that the verdict "was not substantially swayed by the *Luck* error," if any there was, appellant must be awarded a new trial.[33]

So ordered.

TAMM, Circuit Judge, (dissenting):

Today two members of this court reach a new height in their creation of near-mythical "rights" of criminal defendants which requires that their convictions be vacated. One Samuel R. Pillow, a resident of the District of Columbia, left the city for a period of nine days. During that time his apartment was burglarized and he lost $700 worth of personal property including a saxophone valued at $175. Subsequently, Mr. Pillow alerted the police department of his loss. The police located the saxophone in a pawn shop in the northwest section of Washington. It was pawned by a person who signed "Wilson Terry" on the pawn ticket

---

28. *Id.*

29. The two employees of the pawnshop identified appellant as the party who brought the stolen saxophone in for the pawn, although one may not initially have been fully certain. The Government's handwriting expert was firm in his opinion that appellant had signed the pawn receipt in the name of Wilson Terry, and had similarly signed one of Terry's identification cards. The jury could also have taken into consideration appellant's deception through the use of Terry's name when the pawn was made. Yet the only circumstances indicating that appellant was the party who broke into the apartment and stole the saxophone was his possession of the saxophone in the pawnshop. If in truth appellant acquired possession of the instrument by some other means, the verdict should have been different.

30. Since a vital link in the Government's evidentiary chain rested wholly on inference—an inference that appellant might have explained away had he been permitted to testify—we, unlike our dissenting colleague, are unable to say that the error foreclosing his testimony was nonprejudicial.

31. See Gordon v. United States, *supra* note 12, 127 U.S.App.D.C. at 348, 383 F.2d at 941.

32. Compare Luck v. United States, *supra* note 8, 121 U.S.App.D.C. at 157, 348 F.2d at 769.

33. See Kotteakos v. United States, 328 U. S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

and who produced the requisite identification cards. The police then requested the attendants in the store to notify them immediately if the individual who pawned the saxophone returned. Less than one month later the store attendant called the police and notified them that the person who pawned the saxophone was again in the store. The police arrived at the store and placed appellant under arrest. When appellant was searched incident to this arrest the police discovered on his person the other half of the pawn ticket bearing the name "Wilson Terry." At trial, Wilson Terry testified that he had lost the various identification cards previously mentioned and that he had not signed the pawn ticket. Both attendants at the store positively identified appellant as the person who pawned the saxophone. In addition, a handwriting expert testified that it was his opinion that appellant's signature matched the signature of Wilson Terry on the pawn ticket. Appellant did not take the stand and offered neither witnesses nor evidence in his behalf. Needless to say, the jury convicted appellant as charged.

On these facts the majority reverses appellant's conviction and remands for a *Luck*[1]-*Gordon*[2] hearing to determine whether the verdict was "substantially swayed by the *Luck* error."[3] It is clear from the record that the evidence against appellant is overwhelming and that any *Luck* error by the trial judge surely must be classified as "harmless" under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *accord*, Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Under my reading of the relevant authority in the *Luck* area, it is not at all

clear that the appellant in this case ever meaningfully invoked the rule, since he proffered absolutely no defense when queried by the trial judge.[4] I believe that the court need not reach its ponderous consideration of any *Luck* problem since even if the trial judge did not conduct a completely proper *Luck* hearing any error was clearly not prejudicial under both Fed.R.Crim.P. 52(a) and *Chapman*.

Since appellant refused to take the stand, appellant's defense was presented to the jury by his counsel in his opening statement:

> [I]t is our contention that the defendant did not pawn the saxophone nor did he enter the house and take it out (Tr. 88).

It is my opinion that the evidence of appellant's guilt is so overwhelming that whether he took the stand or whether his past convictions were introduced are factors which have a *de minimis* effect upon the conviction which he now seeks to vacate. After reading thoroughly the majority's exercise in judicial time-wasting, one must wonder exactly what appellant's defense will be on the remand. Given this new opportunity, however, perhaps he will be able to explain: (1) if he did not enter the apartment, how he came into possession of the saxophone, and (2) if he did not pawn the saxophone, why he had the other half of the pawn ticket in his possession and why his handwriting matched that on the pawn ticket. The majority might do well to answer these questions for the members of the public who are not well versed in all the technical nuances of the criminal law and who wonder why our

---

1. Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).

2. Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968).

3. Majority opinion at 1317.

4. This court has held many times, as the majority must recognize, that the defense

counsel must invoke *Luck* in a meaningful way. Indeed, we stated not long ago that "[i]f *Luck* made anything clear, it was that the defense is ill-advised to content itself simply with citing *Luck*." Hood v. United States, 125 U.S.App.D.C. 16, 18, 365 F.2d 949, 951 (1966). *See* Jones v. United States, 131 U.S.App.D.C. 216, 404 F.2d 212 (1968); Smith v. United States, 132 U.S.App.D.C. 131, 406 F.2d 667 (1968).

trial courts have such backlogs and delays.

Our court dockets are crowded and this court has repeatedly emphasized the necessity and desirability of speedy trials for all defendants. Yet, with this in mind and for reasons more philosophical than legal, the majority remands this case to the already busy district judge with directions to hold a hearing at which appellant can proffer his "alibi." I must dissent from this further impediment to the achievement of justice in this case despite my acknowledgment of the submissive fatalism with which bench and bar calmly accept the inevitability of endless delay in the termination of criminal prosecutions. I feel it is essential that appellate courts develop an eye for the forest of reality as a necessary substitute for the prevailing sense of the trees of abstract theory. Since my reading of the record discloses insurmountable evidence of appellant's guilt and no "error * * * affect[ing] substantial rights"[5] of appellant, I would affirm his conviction.