COMMONWEALTH vs. ARTHUR W. JONES.

Suffolk.   October 4, 1971. — November 11, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Constitutional Law,* Speedy trial.  *Practice, Criminal,* Speedy trial.  *Evidence,* Leading question.

The delay between the time of an offence, followed shortly by issuance of a complaint and arrest warrant, and the time of the defendant's arrest more than two years later did not deprive him of his right to a speedy trial where one unsuccessful attempt had been made to serve him and there was no evidence that the delay was intentional or that it substantially prejudiced the defence, and there was no substantial showing of deliberately improper police conduct harming the defendant. [501–502]

The exclusion of a leading question put to the defendant in a criminal case by his counsel seeking to show the defendant's inability to recall his whereabouts on the day of the offence was not improper where counsel was not precluded from asking further questions, even though the judge stated he "need not" make an offer of proof. [502]

INDICTMENT found and returned in the Superior Court on October 7, 1970.

A motion to dismiss the indictment was heard by *Kalus, J.*

*Robert V. Greco* for the defendant.

, *Thomas F. Reardon,* Assistant District Attorney ( *Elizabeth C. Casey,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

CUTTER, J.   Jones was charged by indictment dated October 7, 1970, with armed robbery of a store (Honey Farm) in Jamaica Plain on July 19, 1968.  He was found guilty by a judge, sitting without jury.  The questions argued arise from the failure to arrest Jones until September 4, 1970, although a complaint and arrest warrant had issued from the Municipal Court of the Roxbury District on July 31, 1968.  Jones contends that the long delay be-

tween the offence and his arrest unconstitutionally deprived him of a speedy trial. A Superior Court judge denied Jones's motion to dismiss based on this contention, after hearing evidence, the pertinent part of which we summarize below. Jones appealed. The case is before us under G. L. c. 278, §§ 33A–33G, as amended.

When the warrant for Jones's arrest issued on July 31, 1968, Detective Balutis (attached to Boston Police District 10) attempted (with Detective Roche) to serve it upon Jones at his mother's house at 12 Castlegate Road on some occasion after July 31, he thinks on a Saturday. There was "nobody home." He sent the warrant to District 9 (in the jurisdiction of which lies 12 Castlegate Road) "to be . . . served on the evening or morning watch." Thereafter the warrant was returned to the Roxbury court on December 14, 1968, without service. On September 4, 1970, after Jones was arrested on another charge, Detective Balutis obtained an alias warrant against Jones for the Honey Farm robbery charge.

Mrs. Mildred Jones, Jones's mother, testified that she had lived at 12 Castlegate Road after 1967, and that Jones had lived there with her "off and on" until his arrest in May, 1969, on an unrelated holdup charge for which he was confined until his parole on April 22, 1970. He again was there until his arrest in September, 1970, when she first learned that he was charged with the Honey Farm holdup. She had no police inquiries about him prior to that date, although a parole officer had looked for him. There was evidence from her and Jones that he spent considerable time, especially on weekends, with a "girl friend" who lived at a different address. Jones and his mother were away from their house part of the time. Jones, at the time of trial twenty-seven years old and serving a term at the Deer Island House of Correction, testified that he first learned of the Honey Farm charge in September, 1970. He stated, in somewhat rambling testimony, that on July 19, 1968, he "was around. I can't remember." He said that

he could not even remember the person with whom he then was.[1]

At trial before another judge, the Honey Farm acting store manager, Woodrow Barbour, testified that he had selected Jones's photograph from a group of about twelve to fifteen pictures shortly after the robbery. He also identified Jones in court as resembling one of the two persons mentioned below. Two men, he stated, entered the store about 1:10 P.M. on the day of the robbery to buy some soft drinks. They left after a few minutes. About ten to fifteen minutes later the two men reappeared and walked around the store. One "lifted a [pecan] pie from the pie case," and took it to the counter. Barbour asked him if there was anything else. The other man pulled a gun from under his shirt. The man who had handled the pie took the money out of the cash register and asked for Barbour's wallet. The two men left, ran down the street to a waiting vehicle, and sped away. The police were called.

Barbour, in court, noted that Jones did not have a moustache in July, 1968, or the same type of hair arrangement in July, 1968, as when he later saw him twice in court in 1970, two years later. Barbour, who observed the intruders at the store for two or three minutes, agreed that he was "not sure" but said that Jones looked "like the man," and that he was "fairly certain" Jones was "the man" who "took the money."

The pecan pie carton was left on the counter by the intruders. Subsequently, Detectives Roche and Balutis took it away for examination. There was persuasive expert testimony (which need not be stated in detail) warranting

---

[1] The judge excluded (subject to Jones's exception) a question, "You can't tell us what you were doing on July" 19, 1968, and also told Jones's counsel that he need not make an offer of proof, "[I]f you are going to ask him whether he was prejudiced and ask him the specific question, I won't allow you to do it." No further effort by Jones's counsel was made to establish Jones's inability to remember what he was doing at the time of the Honey Farm holdup. This judge thereafter declined to hear the case on the merits, sitting without jury, apparently lest he be prejudiced by the evidence (probably chiefly that of Jones's convictions of other offences) offered with respect to the motion to dismiss.

the conclusion that a fingerprint found on the box was that of Jones.[2]

1. The police failure to serve the complaint warrant on Jones in July or early August, 1968, may have been caused by inefficiency or negligence in Police District 9 to which the warrant was sent.  This, however, is by no means clear.  In any event, there is no indication in the evidence that the failure (and consequent delay) was in any way intentional.[3]  It may have been caused by the frequent absences of Jones, his mother, and her children from her house.  We are unwilling to hold that mere delay in serving a complaint warrant, prior to indictment, constitutes failure to afford a speedy trial, at least in the absence of "much more than appears in the present case" (see *Schlinsky* v. *United States*, 379 F. 2d 735, 737 [1st Cir.]) in the way of substantial prejudice to a defendant's ability to defend himself, or a substantial showing of deliberately improper police conduct harming a defendant.  See *United States* v. *DeMasi*, 445 F. 2d 251, 255–256 (2d Cir.), cert. den. 404 U. S. 882.  No indictment was returned until October 7, 1970, and Jones was tried on December 16, 1970.  The 1968 complaint (despite the delay in arrest and in holding a probable cause hearing) does not seem to us, in the circumstances, to require that Jones, as matter of law, be freed from criminal responsibility for armed robbery.  He is in no worse position than if his indictment, without prior complaint, had

---

[2] There was also testimony that pecan pies were left at the store only on Fridays and usually were delivered about 10:30 A.M.  The robbery took place about 1:30 P.M.  The pie was in a place where customers could pick it up and look at it.  No other pecan pie was sold while the witness Barbour was at the store that day.  Although a possibility existed that Jones could have handled the pie carton earlier in the day, the judge, on the evidence, could reasonably have concluded that Jones's fingerprint was placed on the carton at the time of the holdup.  Cf. *Borum* v. *United States*, 380 F. 2d 595, 597 (D.C. Cir. —— Burger, J., present Chief Justice of the United States, dissenting, pp. 598–602).

[3] The facts in this record, and certain Federal cases cited in fn. 4, *infra*, indicate strongly that prompt service of warrants and prompt arrests may become highly important in preserving the opportunity to prosecute for even serious offences.  Police officials will be wise to improve existing procedures to ensure, so far as possible, diligence in such service and arrests.

occurred toward the end of the applicable statute of limitations. See G. L. c. 277, § 63 (as amended through St. 1955, c. 781, § 1), c. 265, § 17 (as amended through St. 1952, c. 406, § 1).

We recognize that, in some instances, unconstitutional delay may arise after a "formal complaint has been filed." See *Hoopengarner* v. *United States,* 270 F. 2d 465, 469 (6th Cir.). See also *Foley* v. *United States,* 290 F. 2d 562, 565–566 (8th Cir.). We also recognize that prejudice may arise from delay because of a defendant's inability to remember past events and activities of a particular day which might clear him of a charge. The judge who heard the motion to dismiss correctly determined that "whether . . . [Jones was] prejudiced" was "a question of fact and law" for his decision and, by his comments, showed that the issue of possible failure of memory was considered by him. He reasonably concluded that Jones "was not available . . . when the police attempted to serve the warrant," and impliedly rejected the argument of Jones's counsel that there was prejudice.[4] He could properly take the view that Jones had not sustained the burden resting upon him to establish prejudice. See *Commonwealth* v. *Colella, ante,* 144, 151.

2. Jones was afforded reasonable opportunity to establish prejudice from the delay in arresting him. The exclusion of a leading question to Jones (see fn. 1, *supra*) did not preclude his counsel from asking further questions designed to elicit proof of Jones's inability to remember events in July, 1968, even though the judge stated he "need not" make an offer of proof.

*Judgment affirmed.*

---

[4] If there is anything to the contrary in a line of cases in the District of Columbia Circuit, we decline to follow them. See *Hanrahan* v. *United States,* 348 F. 2d 363, 366–368 (D.C. Cir.); *Ross* v. *United States,* 349 F. 2d 210, 211–216 (D.C. Cir.); *Woody* v. *United States,* 370 F. 2d 214, 216 (D.C. Cir. — Burger, J., dissenting) ; *Jones* v. *United States,* 402 F. 2d 639, 641 (D.C. Cir.). See also *Jones* v. *Superior Court,* 3 Cal. 3d 734, 738–741 (two judges dissenting) ; note, 43 N. Y. U. L. Rev. 722. Cf. *Jackson* v. *United States,* 351 F 2d. 821, 822–823 (D.C. Cir.) ; *State* v. *Rountree,* 106 N. J. Super. 135, 143–156.